Nancy F. COLQUETTE, Appellant,

v.

Thomas A. FORBES, Appellee.

No. 13635.

Court of Appeals of Texas, Austin.

Sept. 12, 1984.

Rehearing Denied Oct. 3, 1984.

---

Barry Bishop, L. Parker McNeill, Clark, Thomas, Winters & Shapiro, Austin, for appellant.

Gary F. DeShazo, Davis, DeShazo & Gill, Dan R. Price, Lee & Price, Austin, for appellee.

Before PHILLIPS, C.J., and POWERS and GAMMAGE, JJ.

GAMMAGE, Justice.

Nancy Colquette appeals from a judgment entered in favor of Thomas Forbes for acceleration of a note and foreclosure of an implied equitable vendor's lien on certain real property. We will affirm the judgment of the trial court.

This case began as an action to collect a promissory note executed by Colquette in favor of Forbes pursuant to a property settlement agreement incident to their divorce. The terms of the note provided for it to become due five years from the date of execution, with immediate acceleration of maturity upon Colquette's remarriage or upon her cohabitation with an unrelated adult male at her place of residence. This note was executed in exchange for Forbes' conveyance of his interest in the house to Colquette. The property settlement agreement was approved by the trial court and incorporated into the divorce decree. No express lien was created to secure the note.

Forbes brought suit to collect the note alleging that Colquette had cohabitated with an adult male for more than three

weeks, causing the note to mature according to its terms. Forbes further alleged that he had an implied equitable vendor's lien on the house and sought foreclosure on that lien.

The trial court held that the note was then due, that an equitable vendor's lien existed in favor of Forbes, ordered foreclosure of the lien, and entered judgment for Forbes.

In her two points of error Colquette asserts that the trial court erred in holding that an equitable vendor's lien exists in favor of Forbes, and that acceleration of the note because of her cohabitation with an adult male violates her constitutional right of privacy.

Colquette's first point of error asserts that the trial court erred in imposing an equitable lien on her property. She contends that no implied lien arises out of the division of property upon divorce, and that the establishment of an implied lien is barred by the doctrine of *res judicata,* because of the prior divorce judgment involving the parties. We disagree. Our Supreme Court recently ruled on the precise issue here presented in *McGoodwin v. McGoodwin,* 671 S.W.2d 880 (Tex.1984). The facts in that case are strikingly similar to those now before us. Justice Barrow, writing for the Court in *McGoodwin,* stated that the doctrine of *res judicata* does not apply where the divorced spouse seeks to enforce a vendor's lien he contends arose when the divorce decree was rendered—a claim which could not have been litigated in the prior divorce action.

> The opinion continues by stating that a divorce decree that approves a property settlement agreement by which [a spouse] agrees to pay a sum of money as consideration for the [other spouse's] interest in a particular piece of real estate [implies] a vendor's lien in favor of the [spouse conveying his or her interest].
>
> \* \* \* \* \* \*
>
> Such an agreement though incorporated into a final divorce decree, is treated as a contract, and its legal force and its meaning are governed by the law of contracts,

> not by the law of judgments. [citations omitted]. The property settlement provision now considered is one that directs the payment of money as consideration for the conveyance of an interest in real estate . . . .

In the case at bar, Schedule 2 of the Agreement Incident To Divorce lists those items set aside for Forbes in the Division of Assets portion of the agreement, including the promissory note from Colquette to Forbes, and along with the following language:

> Notwithstanding any other provisions to the contrary, said note is for the husband's ownership interest in [the house].

When purchased money is not paid and the deed to property contains no express lien, an implied lien nevertheless arises in favor of the vendor to secure payment of the purchase money. Such a vendor's lien may be enforced by a suit brought for that purpose. *Id.*

Colquette further argues that if an implied lien existed, it was expressly waived by the provision in the Division of Assets section of the Agreement Incident to Divorce that "Wife shall own, possess, and enjoy, free from any claim of Husband, the property listed in Schedule 1," which includes the house in question. In the *McGoodwin* case, however, the agreement of the parties provided that each was awarded possession of certain property and the other was "divested of all right, title, and interest in and to such property." This appears to us to be a much more strongly worded expression of intent to relinquish any interest in the property conveyed, yet the Supreme Court did not find such boilerplate language sufficient to constitute a waiver of an implied lien.

Colquette's first point of error is overruled.

In her second point of error, Colquette contends that acceleration of the indebtedness, based upon her cohabitation with an unrelated adult male, violates her constitutional right of privacy and is contrary to public policy. Forbes asserts that mere

judicial enforcement of the note according to its terms is not such an intrusion into Colquette's privacy as to be violative of the constitutional right of privacy as recognized in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). We agree.

 Forbes correctly argues that the right of privacy prohibits "unwarranted government interference or intrusion into those areas deemed to be within the protected zone of privacy." *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 679 (Tex. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). The acceleration clause about which Colquette complains is the product of mutual agreement of the parties. The only involvement by the state is judicial construction of the terms of the note and a judicial declaration of obligations *according to the terms of the note.* The only case Colquette cites, wherein judicial enforcement of private contractual obligations has been held to be sufficient governmental involvement to invoke the protections of the United States Constitution, is *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). *Shelley* held that judicial enforcement of racially restrictive covenants was prohibited by the constitution. It is apparent to us that the justifications for the *Shelley* rule are not present in this case. Here, the affected parties consented to the intrusion—if acceleration of maturity of the debt and the particular conditions giving rise thereto can be construed as such—by their mutual acceptance of the terms of the note. *Shelley* is distinguishable in many other respects and strong policy reasons exist for that decision. We hold that, under the facts of this case, judicial approval of the property settlement agreement and subsequent enforcement of the obligations created therein are, in nature and degree, not the type of government involvement restrained by a constitutional right of privacy. *Industrial Foundation of the South v. Texas Industrial Accident Board, supra.*

We also reject Colquette's contention that enforcement of the cohabitation clause would be contrary to public policy. She cites no authority to support this proposition. Furthermore, it appears that the purpose of the note and the agreement giving rise thereto was to provide Colquette time to adjust and make arrangements to pay the note. In view of these considerations, we hold that enforcement of the note is not contrary to public policy. Colquette's second point of error is overruled.

The judgment of the trial court is affirmed.

Affirmed.