**Affirmed and Opinion and Concurring Opinion filed January 24, 2013.**



**In the**

# Fourteenth Court of Appeals

---

### NO. 14-11-00954-CV

---

### GERALD BYRON BARRAS, Appellant

### V.

### LESLEA LORING BARRAS, Appellee

---

**On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Cause No. 10-FD-3077**

---

## OPINION

Appellant Gerald Byron Barras appeals from a final decree of divorce ordering him to pay appellee Leslea Loring Barras $125,000, to be represented by a promissory note and secured by a deed of trust against Gerald's separate property, and ordering his separate estate to reimburse the community estate for

$154,073 as part of the property division. On appeal, Gerald argues that (1) the trial court committed fundamental error by attaching a lien to his separate property to secure a money judgment for Leslea, (2) the evidence and law do not support the trial court's money judgment to Leslea, (3) the trial court improperly awarded reimbursement to the community estate, and (4) the trial court improperly divided the marital estate. Concluding that Gerald's arguments lack merit, we affirm the trial court's judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Gerald and Leslea were previously married and divorced for the first time on June 27, 2000. One of the community assets from the parties' first marriage was a house located on Sunset Drive (the Sunset property). In the June 2000 divorce decree, the parties agreed that Gerald would pay to Leslea the sum of $150,000, payable in installments of $25,000, due on or before December 15 of each year, without interest. The parties agreed that after the $150,000 had been paid, Leslea would transfer by warranty deed all her community interest in the Sunset property to Gerald. They agreed that in the event of default, the house would be sold and the balance due on the $150,000 would be paid to Leslea, with any remaining monies to be paid to Gerald. The decree also provided that Gerald was to have exclusive use and possession of the house. Gerald only paid Leslea one $25,000 installment in 2000, but upon his default, Leslea did not enforce the sale of the house.

During 2002, the parties reconciled. In the time leading up to their second marriage to one another in 2004, Leslea signed a document releasing her lien on the Sunset property so that it could be sold. The sales proceeds were applied toward the purchase of a house on Glenwood Drive (the Glenwood property). The

2

closing on this property occurred a few weeks before the parties' remarriage, and the deed to the Glenwood property is solely in Gerald's name. After the marriage, the parties refinanced the mortgage; Leslea cosigned that note, and an additional note in connection with a home equity loan.[1] The parties also applied a joint tax refund toward repairs on the Glenwood property in late 2009.

The parties separated again in 2010, and Gerald petitioned for a second divorce. In his amended petition for divorce, Gerald asked the trial court to confirm his separate property, award him a disproportionate share of the community estate, and order his separate estate reimbursed from the community estate and from Leslea's separate estate. In her counter-petition, Leslea asked the trial court to confirm her separate property and order the community estate reimbursed from Gerald's separate estate.

After a nonjury trial, the trial court issued its final decree on August 30, 2011. The court awarded Leslea as her sole and separate property $125,000 payable by Gerald, to be represented by a promissory note and secured by a deed of trust against the Glenwood property. In the decree, the trial court also included the following findings: the community estate is entitled to reimbursement from Gerald's estate for principal reduction on the Glenwood property and for a tax refund in the amount of $25,111 used on home repairs to the Glenwood property; it specifically had considered the community reimbursement claims in making its property division; and the $125,000 award to Leslea from Gerald's separate estate "is a derivative of the monies awarded to [Leslea]" in the parties' first divorce and is a debt intended to survive any bankruptcy.

---

[1] The parties used this home equity loan toward the down payment on a property in Corpus Christi.

3

At Gerald's request, the trial court also issued findings of fact and conclusions of law. The trial court issued a finding awarding Leslea "[t]he sum of $125,000.00, to be represented by a promissory note from Gerald Barras to Leslea Barras, to be secured against the Glenwood property—as same is a derivative of the monies awarded to Leslea Barras in the original decree of divorce that was secured by the Sunset property"; ordering Gerald to make payments of $25,000 each July beginning in 2012, and continuing until the note is paid in full, at which time Leslea is to release the lien; and providing that such debt shall survive bankruptcy. The trial court found that Gerald had not paid Leslea the cash sum due to her under the first divorce decree as of the date of second divorce trial, and that Leslea produced clear and convincing evidence that the $125,000 cash sum due from Gerald was her sole and separate property and she was entitled to a money judgment. The court also found that the community estate was entitled to reimbursement from Gerald's estate in the amount of $154,073 ($128,962 in principal reduction on the Glenwood property and $25,111 in a tax return used for repairs to the Glenwood property) and such was considered in the court's property division. At Gerald's request, the trial court issued additional findings of fact and conclusions of law, which included the finding that the Glenwood property, subject to the equitable lien attached to secure the promissory note, was Gerald's separate property. Gerald timely filed his notice of appeal.

## II. ISSUES PRESENTED

Gerald presents four issues for our review. In his first issue, he contends that the trial court committed a fundamental error by awarding Leslea a lien against the Glenwood property, his separate-property homestead, to secure his payment of the $125,000 judgment. In his second issue, Gerald attacks the $125,000 award,

4

asserting that the trial court erred as a matter of law by even considering such claim and by refusing his affirmative defenses of statute of limitations and release of judgment. Also, as part of his second issue, Gerald contends that the $125,000 award to Leslea as her separate property is not supported by legally and factually sufficient evidence, and therefore the trial court abused its discretion. In his third issue, Gerald claims that the trial court abused its discretion in awarding reimbursement to the community estate as part of its property division. And in his fourth and final issue, Gerald argues that the trial court abused its discretion in its community property division.

## III.    GOVERNING LAW FOR PROPERTY DIVISION

In a decree of divorce, the trial court shall order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (West 2006). "It is well established that a trial court may exercise wide discretion in ordering a property division." *Aduli v. Aduli*, 368 S.W.3d 805, 819 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974)). The property division need not be equal, and it is presumed that the trial court properly exercised its discretion in determining the value and division of marital property. *Id.* A trial court's division of community property may take into consideration factors such as the spouses' capabilities and abilities, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity in age, size of separate estates, nature of the property, and disparity in income and earning capacity. *Knight v. Knight*, 301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In dividing property, courts must begin with the presumption that all property possessed by either spouse during or on dissolution of the marriage is community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001)). To overcome this presumption, the spouse claiming assets as separate property is required to establish their separate character by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b); *Stavinoha*, 126 S.W.3d at 607 ("'Clear and convincing' evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm conviction or belief as to the truth of the allegations sought to be established."). Separate property is property owned by a spouse before marriage; property acquired during the marriage by gift, devise, or descent; and the recovery for personal injuries sustained during the marriage. TEX. FAM. CODE ANN. § 3.001 (West 2006). The spouse claiming the separate nature of certain property must trace and clearly identify the property claimed to be separate. *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Id.* As a general rule, the clear and convincing standard is not satisfied by testimony that property possessed at the time the marriage is dissolved is separate property when such testimony is contradicted or unsupported by documentary evidence tracing the asserted separate nature of the property. *Id.*

## IV. STANDARD OF REVIEW FOR PROPERTY DIVISION

We review alleged error in dividing marital property for an abuse of discretion. *Aduli*, 368 S.W.3d at 819 (citing *Bell*, 513 S.W.2d at 22). To disturb a trial court's division of property, a party must show that the court clearly abused its discretion by a division or an order that is manifestly unjust or unfair. *Stavinoha*, 126 S.W.3d at 607–08. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support the decision." *Knight*, 301 S.W.3d at 728. A trial court abuses its discretion if it acted unreasonably or arbitrarily, or without reference to any guiding rules or principles. *Id.* (citing *Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.)). Legal sufficiency and factual sufficiency are relevant factors, rather than independent bases for reversal, in determining whether the trial court abused its discretion in its property division. *Aduli*, 368 S.W.3d at 819; *Stavinoha*, 126 S.W.3d at 608 (citing *Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no writ)).[2]

## V. ANALYSIS

### A. Did the trial court err by imposing an equitable lien on the Glenwood property?

In his first issue, Gerald asserts that the trial court committed fundamental error by ordering that the $125,000 money judgment to Leslea be secured by a deed of trust against Gerald's separate-property homestead. Gerald bases his claim on the protection afforded to homestead property by section 50 of article 16 of the

---

[2] We discuss the standard of review for challenges to separate-property findings *infra* section V.B.4, and other applicable standards of review as part of our analysis.

Texas Constitution and argues that the lien on the Glenwood property is invalid pursuant to *Heggen v. Pemelton*, 836 S.W.2d 145 (Tex. 1992). We conclude, however, that the lien imposed here falls within the list of constitutionally permitted exceptions to homestead protection, and that *Heggen* therefore is inapplicable.

The Texas Constitution provides that homestead property is exempt from forced sale to pay debts, except for certain specified categories of debts. TEX. CONST. art. XVI, § 50. The constitutionally allowed exceptions to the homestead exemption include debts for: (1) purchase money of the property; (2) taxes due on the property; (3) owelty of partition by court order or written agreement; (4) refinance of a lien against the property; (5) certain work and material to improve, renovate, or repair the property; (6) certain extensions of credit; (7) reverse mortgages; and (8) conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property. *Id.* § 50(a). The constitution does not contain an exception allowing a lien to be imposed simply to achieve a "just and right" division of property upon divorce. *See Heggen*, 836 S.W.2d at 148.

In *Heggen*, the Texas Supreme Court considered whether the trial court properly impressed an equitable lien on a spouse's separate-property homestead. 836 S.W.2d at 145. In that case, the trial court ordered the ex-wife to pay $150,000 to the ex-husband for his community interest in her separate-property homestead (deeded to her as a gift from her parents) and imposed an equitable lien on the ex-wife's homestead to enforce the court's judgment. *Id.* at 146 & n.1 (also awarding separately a reimbursement claim to community estate from ex-wife's estate). The trial court granted the ex-husband this $150,000 money judgment and lien "simply to ensure a just and right division" of the marital estate. *Id.* The

8

supreme court ruled the lien invalid because (1) "it burdened [the ex-wife's] real property for reasons other than to secure [the ex-husband's] reimbursement interest; that is, the trial court impermissibly imposed it to secure a just and right division," *id.* at 148, and (2) "it imposed a lien on [the ex-wife's] homestead that, based on the record, did not fit into any of the categories allowed by the Texas Constitution; that is, it was not a tax lien, it was not a purchase money lien, nor was it an improvement lien," *id.* (citing TEX. CONST. art. XVI, § 50). The *Heggen* court recognized that the trial court, on remand, however, could impress an equitable lien on the ex-wife's separate-property homestead in favor of the ex-husband if it found that his reimbursement claim satisfied a constitutional exception. *Id.* at 147–48.

We apply a de novo standard of review where the parties' assertions require review of Texas constitutional provisions that involve matters of law. *Harris County Hosp. Dist. v. Tomball Regional Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *see Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 211 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Citing *Heggen*, Gerald argues that trial court imposed an unconstitutional lien on his separate-property homestead. But this case differs from *Heggen* in that, here, the lien is supported by an implied finding that it is a purchase-money lien, and thus, it was not imposed simply to achieve a "just and right" division of the marital estate. The trial court found that Leslea produced clear and convincing evidence that the $125,000 due from Gerald was Leslea's sole and separate property and expressly tied that $125,000 money judgment and the lien on the Glenwood property back to the monies awarded to her in the parties' June 27, 2000 agreed divorce decree. This equitable lien reasonably fits within the constitutional purchase-money lien exception to homestead protection. *See* TEX. CONST. art. XVI, § 50(a)(1) (authorizing debts for "the purchase money

thereof, or a part of such purchase money"); *see also Heggen*, 836 S.W.2d at 147 (discussing cases involving "valid liens of the type which pass constitutional muster, i.e., liens securing purchase money interests, taxes, or improvements").

As the case of *McGoodwin v. McGoodwin* illustrates, a purchase-money lien can be implied: "[W]hen no express lien is reserved in a deed and the purchase money is not paid, a lien nevertheless arises by implication in favor of the vendor to secure payment of the purchase money." 671 S.W.2d 880, 882 (Tex. 1984). In *McGoodwin*, the Supreme Court of Texas reviewed a trial court's approval of an agreed property settlement in which a husband agreed to pay his wife $22,500 as consideration for her interest in real property. When the ex-husband failed to pay, the ex-wife sought to foreclose on the property based on an implied vendor's lien; the trial court agreed, and ordered the lien foreclosed and the property sold. The supreme court concluded the ex-wife was entitled to foreclosure of her implied purchase-money lien that was superior to the ex-husband's claim of constitutional homestead protection. *Id.* at 882–83; *see also Watson v. Heaton*, No. 14-09-00717-CV, 2010 WL 5132565, at *4 (Tex. App.—Houston [14th Dist.] Dec. 14, 2010, no pet.) (mem. op.) (recognizing ability of ex-wife as vendor's lien holder to foreclose on her interest in ex-husband's separate property); *Magallanez v. Magallanez*, 911 S.W.2d 91, 94–95 (Tex. App.—El Paso 1995, no writ) (affirming validity of deed of trust executed against ex-wife's separate homestead as equitable purchase-money lien for "the interest in the house that [ex-husband] had 'sold'"); *Bowden v. Knowlton*, 734 S.W.2d 206, 208 (Tex. App.—Houston [1st Dist.] 1987, no writ) (holding that, in aid of enforcement of money award to ex-wife in part for her property interest, trial court had authority to impose equitable lien on ex-husband's residence); *Stapler v. Stapler*, 720 S.W.2d 271, 272–73 (Tex. App.—Fort Worth 1986, no writ) (affirming enforcement of equitable implied vendor's

10

lien on ex-wife's real property where she failed to pay tax debt in consideration for being awarded ex-husband's property interest); *Colquette v. Forbes*, 680 S.W.2d 536, 538 (Tex. App.—Austin 1984, no writ) (approving foreclosure on ex-wife's separate property where implied vendor's lien arose in favor of ex-husband to secure promissory note executed in exchange for his property interest).

Although the trial court did not label the lien at issue an implied, equitable purchase-money lien, Rule 299 of the Texas Rules of Civil Procedure, Omitted Findings, permits this court to presume such a finding. Omitted findings are governed by Texas Rule of Civil Procedure 299. On appeal, an omitted element of a ground of recovery presumptively will be found in support of the judgment if: (1) the trial court included one or more elements of the ground of recovery in the findings of fact; (2) the omitted element was not properly requested; and (3) the omitted finding is supported by the evidence. *Foley v. Capital One Bank, N.A.*, No. 14-11-00998-CV, —S.W.3d—, 2012 WL 3860445, at *3 (Tex. App.—Houston [14th Dist.] Sept. 6, 2012, no pet.); *see* TEX. R. CIV. P. 299 ("[W]hen one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.").

The elements of an implied, equitable purchase-money lien are: "when no express lien is reserved in a deed and the purchase money is not paid, a lien nevertheless arises by implication in favor of the vendor to secure payment of the purchase money." *McGoodwin*, 671 S.W.2d at 882. The trial court included in its findings of fact that the $125,000 award, to be represented by a promissory note and secured by a deed against the Glenwood property, was a derivative of the prior divorce award to Leslea that had been secured by the Sunset property, had not been

paid by Gerald as of the second divorce trial, was Leslea's sole and separate property as established through clear and convincing evidence, and entitled her to a judgment against Gerald. The trial court additionally found that the Glenwood property was Gerald's separate real property, subject to the equitable lien attached to secure the note to Leslea. Although the court failed to include the finding that this lien in favor of Leslea was an implied vendor's or purchase-money lien, it found the other elements of her claim for recovery. The trial court imposed an equitable lien on the Glenwood property in favor of Leslea in order to secure payment of the $125,000, which Gerald owed Leslea as her separate property as a derivative of the prior divorce award and which he had not paid. Thus, the first condition is met.

Second, although Gerald requested that the trial court issue findings of fact and conclusions of law and additional findings and conclusions pursuant to Rules 296 and 298, respectively, of the Texas Rules of Civil Procedure, he did not properly request any findings regarding the nature of the lien on the Glenwood property. Nor did Leslea request any such findings. Thus, the second condition is met.

And third, the evidence supports a finding that the trial court imposed an implied, equitable purchase-money lien on the Glenwood property. The evidence shows that in their first divorce, Gerald agreed to pay Leslea $150,000 for her community interest in the Sunset property, and that Leslea was to transfer her interest in the property to Gerald when the debt was paid. In the event of default, the Sunset property was to be sold, with any balance due on the $150,000 award to be paid to Leslea. Because Gerald defaulted after paying Leslea only $25,000, she was entitled to $125,000 from the sale of the property; however, the parties

12

reconciled before the Sunset property was sold, and the proceeds from the sale went toward the purchase, in Gerald's name, of the Glenwood property a few weeks before the parties' remarriage. When the Sunset property was sold, inception of title occurred and Leslea's right to the remaining $125,000, as her separate property, vested.[3] However, instead of paying off his debt, Gerald used the proceeds from the sale of the Sunset property to purchase the Glenwood property; the trial court expressly recognized the "derivative" aspect of this $125,000 debt in its finding.

This alternative usage of the Sunset property sales proceeds to purchase Gerald's separate property did not alter the separate character of the $125,000 debt due to Leslea. Property established to be separate remains separate property regardless of the fact that it may undergo mutations or changes in form; its separate character is not altered by the sale, exchange, or substitution of the property. *Harris v. Harris*, 765 S.W.2d 798, 802–03 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (affirming continued separate nature of partnership interest awarded to ex-husband in a previous divorce despite execution of additional partnership-related agreement during subsequent marriage). Since Gerald failed to pay the $125,000 debt for Leslea's property interest and instead put the proceeds from the sale of the Sunset property, which then included Leslea's separate property, toward a separate property for himself, a purchase-money lien in the Glenwood property in Leslea's favor "arose by implication, as a natural equity creating a constructive trust in the vendee, that he should not keep the estate of another without paying for it." *McGoodwin*, 671 S.W.2d at 882 (citation omitted). The evidence supports that

---

[3] "Property is characterized as 'separate' or 'community' at the time of the inception of title to the property." *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (explaining that inception of title occurs when party first has right of claim to the property by virtue of which title is finally vested).

the Glenwood property was purchased with money traceable to and derived from the debt awarded to Leslea in the prior divorce for her property interest, which came due to her as her sole and separate property when the Sunset property was sold, and which Gerald had not yet paid as of the second divorce trial. Therefore, all three conditions having been met in support of the omitted finding in the trial court's judgment, we supply by presumption the omitted element that the trial court imposed an implied, equitable purchase-money lien on the Glenwood property. Because we conclude that the constitution authorizes such a lien as an exception to homestead protection, we overrule Gerald's first issue.

## B. Did the trial court err or abuse its discretion in awarding Leslea $125,000 as her separate property?

In his second issue, Gerald presents four sub-issues. First, he asserts that the trial court erred as a matter of law by awarding Leslea $125,000 as her separate property from the parties' prior agreed divorce decree because her pleadings were deficient. Second, he contends that the trial court erred as a matter of law by refusing his affirmative defense of limitations. Third, he argues that the trial also erred by refusing his release defense. Fourth, Gerald contends that the evidence is legally and factually insufficient to support the $125,000 award.

### 1. The parties tried Leslea's $125,000 claim by consent.

As a threshold sub-issue, Gerald argues that Leslea cannot recover the $125,000 judgment because she did not set forth sufficiently this theory of recovery in her pleadings. Leslea responds that the parties tried by consent the issue of her right to a reduction to money judgment of the $125,000 debt.

14

A trial court's judgment must conform to the pleadings. TEX. R. CIV. P. 301; *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.-Houston [14 Dist.] 2009, no pet.). "If issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings." *Teel v. Shifflett*, 309 S.W.3d 597, 602 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To ascertain if an issue was tried by consent, the reviewing court must examine the record "not for evidence of the issue, but rather for evidence of trial of the issue." *Id.* (citing *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

Here, the record supports that the issue of Gerald's nonpayment of $125,000 of the $150,000 award from the first divorce and Leslea's entitlement to a judgment confirming $125,000 as her separate property was tried by consent of both parties. Leslea testified on both direct and cross-examination regarding the prior divorce decree's $150,000 award and its terms; how Gerald only paid her $25,000 toward the award; and after they reconciled, how she released her lien on the Sunset property because the money was going toward their new family home, the Glenwood property. Leslea also testified that she was asking the trial court to confirm the unpaid $125,000 as her separate property. Gerald testified regarding the $150,000 that he was supposed to pay Leslea under their prior divorce decree and his payment of only $25,000. He also testified that he purchased the Glenwood property before their remarriage and that the money used for this purchase could have come from the sale of the Sunset property. While Gerald's trial counsel objected to the $150,000 award from the prior divorce decree being referred to as a judgment, this objection actually is not inconsistent with the relief that Leslea sought at trial: to enforce the unpaid portion of the prior award through a judgment. Although Leslea failed to include in her pleadings a claim that she

was seeking to enforce the prior divorce decree pursuant to section 9.010, Reduction to Money Judgment, of the Texas Family Code, the evidence shows that the parties tried precisely this issue: "If a party did not receive payments of money as awarded in the decree of divorce or annulment, the court may render judgment against a defaulting party for the amount of unpaid payments to which the party is entitled." TEX. FAM. CODE ANN. § 9.010(b) (West 2006). The relevance of the admitted evidence particularly related to whether Leslea was entitled to a money judgment on this unpaid $125,000 from the first divorce as her separate property, as opposed to any pleaded issue of reimbursement or division of the community estate. Moreover, although she did not reference section 9.010 in her request for relief, Leslea explicitly requested that the trial court confirm the $125,000 awarded to her in the prior divorce as her separate property and secure such money judgment to the full extent of the law. We agree that the parties tried this issue by consent. Therefore, the trial court did not err in addressing the issue.

## 2. Gerald waived any limitations defense.

Although he did not raise this affirmative defense in his pleadings or request any findings from the trial court on his limitations defense, Gerald contends that because the terms of divorce decrees are governed by contract law principles, the four-year statute of limitations in section 16.051 of the Texas Civil Practice and Remedies Code bars Leslea's claim as a matter of law.[4] Without deciding whether

---

[4] Gerald has not provided, and we have not located, any case that applies the residual limitations period in section 16.051 to a party's enforcement of a divorce decree pursuant to the Family Code. Gerald's cited authority, *Stine v. Stewart*, does not apply because that case did not involve an enforcement claim. 80 S.W.3d 586, 592–93 (Tex. 2002) (concerning a third-party creditor beneficiary who was asserting a breach-of-contract claim based on her daughter's divorce decree).

16

or not the four-year statute applies, we conclude that Gerald has failed to preserve this issue for appeal.

Statute of limitations is an affirmative defense, TEX. R. CIV. P. 94, where the party asserting the defense bears the initial burden to plead, prove, and secure findings to sustain his plea of limitations. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). A party who fails to secure findings to sustain his plea of limitations waives the defense. *Cooper v. Cochran*, 288 S.W.3d 522, 531 (Tex. App.—Dallas 2009, no pet.) (concluding that party waived statute of limitations defense where he never requested any relevant findings of fact); *Medistar Cop. v. Schmidt*, 267 S.W.3d 150, 162 (Tex. App.—San Antonio 2008, pet. denied) (citing *Woods*, 769 S.W.2d at 517, in concluding same).

We can understand how Gerald initially may have failed to plead limitations as a defense to Leslea's counter-petition; however, during trial it became clear that the parties were trying Leslea's enforcement claim in which she sought a reduction to money judgment of the unpaid $125,000 from the prior divorce. The trial court then awarded Leslea relief on this claim and issued findings relevant to this claim. But Gerald never requested findings from the court on his limitations defense. Nor did he specifically request additional or amended findings of fact relevant to his limitations defense after the trial court issued its original findings of fact and conclusions of law. We conclude, therefore, that Gerald has waived any error with respect to his affirmative defense to Leslea's enforcement claim under any statute of limitations. Therefore, we overrule this sub-issue.

### 3. Gerald's release defense fails.

Gerald also contends that the evidence established, as a matter of law, that the release Leslea signed in connection with the sale of the Sunset property, after

his only payment of $25,000 and prior to the parties' remarriage, operated as a release of judgment to the $125,000 debt remaining under their prior divorce decree. However, the record does not include a copy of the actual signed release.

Although Gerald failed to include release as an affirmative defense in his pleadings,[5] the record supports that the issue of whether Leslea released the $125,000 debt by her agreement to sell the Sunset property was tried by consent by both parties. In addition to questioning regarding the terms of the $150,000 award from the first divorce, both parties' attorneys elicited testimony from Leslea regarding her signing a release of lien in conjunction with the sale of the Sunset property, despite Gerald's only paying $25,000 of that award. Leslea also testified regarding the circumstances surrounding her signing the release, whether she signed it voluntarily, and to her intent and understanding of what the release covered. The relevance of the admitted evidence particularly related to whether Leslea's signing of a release of lien operated as a release to Gerald's nonpayment of the remaining $125,000 from the prior divorce. Therefore, the parties tried this defense by consent.

We construe Gerald's argument as an attack on the legal sufficiency of the trial court's implied adverse finding on release—that Leslea did not release her right to seek the $125,000 debt. This issue requires us to review the entire record using the same legal sufficiency standard applicable to a jury's answers. *Hartis v. Century Furniture Indus., Inc.*, 230 S.W.3d 723, 733 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (considering legal sufficiency challenge to trial court's implied findings). A party attacking the legal sufficiency of an adverse finding on

---

[5] Release is an affirmative defense, TEX. R. CIV. P. 94, where the defendant bears the burden to plead and prove the existence of an effective and valid release. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990).

an issue on which he had the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Id.* at 733–34 (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)). When reviewing a legal sufficiency, or no evidence, challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Harrison v. Harrison*, 321 S.W.3d 899, 901 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 901–02 (citing *City of Keller*, 168 S.W.3d at 827); *Hartis*, 230 S.W.3d at 733–34. The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review, keeping in mind that the trier of fact is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Harrison*, 321 S.W.3d at 902. "This court cannot substitute our judgment for that of the trier of fact, so long as the evidence falls within the zone of reasonable disagreement." *Id.* But if the evidence allows only one inference, we may not disregard it. *Id.*

In support of his argument that Leslea released her claim to judgment on the unpaid $125,000 by signing a release of lien, Gerald relies on *Rapp v. Mandell & Wright, P.C.*, 123 S.W.3d 431 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). This court explained in *Rapp* that a release of judgment is an express relinquishment by the judgment creditor of his rights in the judgment, which operates as a bar because the one who might otherwise have asserted the right expressly has surrendered it. *Rapp*, 123 S.W.3d at 434. There, the appellant had signed an acknowledgment of payment and release of judgment where he expressly acknowledged receipt of the full amount of the trial court's judgment and he

"unconditionally and unambiguously acknowledged that the part of the judgment he now attacks on appeal is satisfied and released." *Id.* at 433, 435. This court therefore concluded that the appellant had relinquished all rights in and to the judgment and dismissed the appeal. *Id.* at 436. *Rapp* is distinguishable here. The record does not contain the release of lien that Leslea admitted signing. Moreover, Gerald points to no evidence that in such release Leslea expressly acknowledged receipt of the $125,000 balance or that she unconditionally and unambiguously acknowledged that such debt as described in the prior agreed divorce decree was satisfied and released.

Reviewing the evidence in the light most favorable to the challenged implied finding and indulging every reasonable inference that would support it, Gerald's legal sufficiency argument fails. The evidence here indicates that Leslea received only one payment of $25,000 from Gerald, and the trial court found that as of the second divorce trial, Gerald had not paid the $125,000 balance. There is also evidence that Leslea agreed to release her interest in the Sunset property so that the property could be sold and so that the proceeds could be used for a down payment on the Glenwood property as their family home. Although Leslie at one point during cross-examination agreed that her intent in signing the release on the Sunset property was to release the debt, on two other occasions she testified instead to her understanding that she still had a claim to the unpaid $125,000 debt as her separate property. Thus, a reasonable fact finder could credit the evidence supporting that Leslea only released her lien and not the underlying debt, and disregard any conflicting evidence. Moreover, particularly in the absence of the release itself and keeping in mind that the trier of fact is the sole judge of witness credibility and the weight to be given to testimony, fair-minded people could find that Gerald failed to establish release. We conclude that the record reveals sufficient evidence that

20

supports the trial court's implied finding. As a result, the trial court did not err when it refused Gerald's release defense, and we overrule Gerald's sub-issue.

### 4. Sufficient evidence supports the $125,000 award.

Finally, Gerald attacks the legal and factual sufficiency of the evidence supporting the $125,000 award. He challenges the trial court's finding that Leslea still had a claim for $125,000 as her separate property by essentially reasserting his limitations and release defenses, without arguing any particular alleged deficiencies in Leslea's tracing or identification of her separate property.

In light of the Texas Supreme Court's view that the traditional legal and factual sufficiency reviews are not adequate to accommodate the clear and convincing burden of proof in parental termination proceedings, this court applies the same heightened standard of review to separate-property findings in divorce cases:

> [W]hen we conduct a legal sufficiency review of a separate property finding, we are instructed to look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. Looking at the evidence in the light most favorable to the finding means that we must (1) assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and (2) disregard all contrary evidence that a reasonable fact finder could have disbelieved or found to have been incredible. However, we are not required to disregard undisputed facts that do not support the finding, because that might skew a clear and convincing analysis. If we determine that no reasonable fact finder could form a firm belief or conviction of the truth of the matter to be proved, we must conclude that the evidence is legally insufficient.

*Stavinoha*, 126 S.W.3d at 608 (citations to *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002), omitted); *Zagorski*, 116 S.W.3d at 314 ("When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review."). As for factual sufficiency review of a separate-property finding,

> [w]e must consider whether all of the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations sought to be established. We should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. If we determine the evidence is factually insufficient, we are to detail in our opinion why we have concluded that a reasonable fact finder could not have credited disputed evidence in favor of the finding.

*Stavinoha*, 126 S.W.3d at 609 (citations to *J.F.C.*, 96 S.W.3d at 266–67, and *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002), omitted); *see Zagorski*, 116 S.W.3d at 314. "Even applying this heightened standard of review, a factual sufficiency point requires the appellate court to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Zagorski*, 116 S.W.3d at 314.

We first consider Gerald's legal sufficiency challenge. Here, the trial evidence consisted of: the parties' prior agreed divorce decree describing the $150,000 award to Leslea for her community interest in the Sunset property and how, in the event of default, the house was to be sold, with Leslea entitled to the balance on the debt from the sales proceeds; testimony by both parties that Gerald

only had paid $25,000 toward that debt; testimony by Leslea that she agreed to sell the Sunset property and signed a release of lien prior to the parties' remarriage, that she released the lien because the proceeds of that sale were to go toward the building and purchase of the Glenwood property as their family home, and that she understood the remaining $125,000 was her separate property; and testimony by Gerald that he purchased the Glenwood property before they were remarried and that the proceeds to buy the Glenwood property could have come from the sale of the Sunset property. Looking at it all the evidence in the light most favorable to the separate-property finding, this documentary and testimonial evidence sufficiently satisfies the clear and convincing standard; the trial court reasonably could have formed a firm belief or conviction that Leslea was entitled to the $125,000 as her separate property.

With regard to Gerald's factual sufficiency challenge, the only evidence arguably in dispute here concerns the circumstances of the release of lien Leslea signed; however, the trial court reasonably could have resolved any disputed evidence in favor of its implied finding that Leslea did not release the debt and of its finding that she remained entitled to the $125,000 as her separate property. Therefore, based on all the evidence, the trial court reasonably could have formed a firm belief or conviction about the truth of Leslea's claim to the $125,000 as her separate property, and the court's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

We conclude that the evidence sufficiently supported the trial court's separate-property characterization of the $125,000. Because the trial court acted within its discretion in making its property division, we overrule Gerald's sub-issue.

**C. Did the trial court abuse its discretion by finding that the community estate was entitled to reimbursement from Gerald's separate estate?**

In his third issue, Gerald contends that the trial court abused its discretion in ordering him to reimburse the community estate for amounts allegedly expended to improve the Glenwood property, which is part of Gerald's separate estate. The trial court found that the community estate was entitled to reimbursement in the amount of $154,073 ($128,962 in principal reduction on the Glenwood property and $25,111, which represents the use of the community tax return to pay for repairs on Glenwood). Gerald argues that Leslea failed to present legally and factually sufficient evidence of any enhancement in the Glenwood property's value.

Here, the evidence supports three types of reimbursements. First, the record contains evidence showing how much the principal was paid down on the initial mortgage and then on the refinanced mortgage taken out on the Glenwood property. Second, the record also contains evidence showing that the parties took out a home equity loan on the Glenwood property, which went toward a down payment on a property in Corpus Christi, and showing how much the principal was paid down on this loan. The amount of principal paid down on the three loans totaled $128,962; Gerald does not dispute this amount or that the principal reduction came from community funds. Third, Leslea testified that the parties' 2008 joint tax refund of $25,111 went toward debts related to window repairs on the Glenwood property.

Reimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Vallone v. Vallone*, 644 S.W.2d 455, 458–59 (Tex. 1982).

Reimbursement claims are governed by section 3.402 of the Texas Family Code and can arise from a variety of expenditures or contributions. *See* TEX. FAM. CODE ANN. § 3.402(a) (West Supp. 2012) (identifying nine categories of expenditures that are included within the meaning of "a claim for reimbursement"). In a claim for reimbursement, the trial court shall determine the rights of the parties and apply equitable principles to determine whether to recognize the claim after considering the parties' relative circumstances and, in appropriate circumstances, order a division of the claim in a just and right manner. TEX. FAM. CODE ANN. § 7.007 (West Supp. 2012). Because a trial court resolves claims for reimbursement under equitable principles, claims for reimbursement may be offset against each other where appropriate. *Id.* § 3.402(b). The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures were made and that they are reimbursable. *Vallone*, 644 S.W.2d at 458–59. "[T]he payment by one marital estate of the debt of another creates a prima facie right of reimbursement." *Penick v. Penick*, 783 S.W.2d 194, 196 (Tex. 1988). The party seeking an offset to a claim for reimbursement bears the burden of proof with respect to the offset. TEX. FAM. CODE. ANN. § 3.402(e). A trial court's discretion in evaluating a claim for reimbursement is equally as broad as that discretion exercised by a trial court in making a just and right division of the community estate. *Penick*, S.W.2d at 198 ("In the final analysis, great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement.").

### 1. Section 3.402(d) does not apply to all claims under section 3.402(a).

Gerald contends that Leslea's reimbursement claims fail because she failed to meet the requirements of Texas Family Code section 3.402(d). Section 3.402(d)

25

provides: "Reimbursement for funds expended by a marital estate for improvements to another marital estate shall be measured by the enhancement in value to the benefitted marital estate." TEX. FAM. CODE ANN. § 3.402(d) (emphasis added). Gerald argues that the trial court abused its discretion in ordering reimbursement because there is no evidence that the value of the Glenwood property was enhanced. Gerald contends that in ordering his estate to reimburse the community, the trial court was resolving a reimbursement claim under Texas Family Code section 3.402(a)(5). Such a reimbursement claim consists of "the reduction of the principal amount of that part of a debt, including a home equity loan: (A) incurred during a marriage; (B) secured by a lien on property; and (C) incurred for the acquisition of, or for capital improvements to, property." *Id.* § 3.402(a)(5) (emphasis added).

We first will determine whether the trial court was bound by statute to measure any of the reimbursement claims by the enhancement in value to the Glenwood property; because Gerald's assertion requires statutory review, we review this claim de novo. *Harris County Hosp. Dist.*, 283 S.W.3d at 842; *see Ross*, 296 S.W.3d at 211.

"In construing a statute, our aim is to determine and give effect to the Legislature's intent, and we begin with the plain and common meaning of the statute's words." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012) (internal quotation marks and citations omitted). The legislature has directed courts to employ the common usage rule, meaning that words and phrases shall be read in context and construed according to the rules of grammar and common usage, but also has directed that words in a statute be given a technical meaning if such a meaning has been acquired by legislative definition or as a term

26

of art. *Traxler v. Entergy Gulf States, Inc.*, No. 10-0970, 376 S.W.3d 742, 747 (Tex. 2012) (citing TEX. GOV'T CODE ANN. § 311.011 (West 2005)). We construe statutes to give effect to every provision and ensure that no provision is rendered meaningless or superfluous. *Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 248 n.35 (Tex. 2010). And we presume that the legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (citation omitted). If a statute is unambiguous, we adopt the interpretation supported by its plain language, unless such an interpretation would lead to absurd results. *Id.*

Although section 3.402(a) includes nine categories of reimbursement, section 3.402(d) does not provide that claims for reimbursement generally shall be measured by the enhancement in value to the benefited estate, but rather provides that "[r]eimbursement for funds expended by a marital estate for improvements to another marital estate shall be measured by the enhancement in value to the benefited marital estate." TEX. FAM. CODE ANN. § 3.402(d). The legislature purposefully included the modifying phrase "for improvements to another marital estate" to limit the type of reimbursement claim required to be measured by the enhancement in value to the benefited estate. The term "improvements" also appears in three of the nine enumerated categories of section 3.402 reimbursement claims—subsections (a)(5), (a)(6),[6] and (a)(8).[7] In these three instances, the precise phrase employed is "capital improvements."

---

[6] TEX. FAM. CODE ANN. § 3.402(a)(6) (covering "the reduction of the principal amount of that part of a debt: (A) incurred during a marriage; (B) secured by a lien on property owned by a spouse; (C) for which the creditor agreed to look for repayment solely to the separate marital

"Improvements" is not defined in the reimbursement subchapter, *see id.* § 3.401, or elsewhere in the Family Code. The Texas Supreme Court has provided this definition: "An improvement includes all additions to the freehold except for trade fixtures which can be removed without injury to the property." *Sonnier v. Chisholm-Ryder Co., Inc.*, 909 S.W.2d 475, 479 (Tex. 1995) (interpreting section 16.009 of Texas Civil Practice and Remedies Code). Courts have treated items such as home construction,[8] renovations to a ranch house,[9] and building stock tanks on a farm[10] as improvements for purposes of reimbursement. "Capital improvements" also is not defined in the reimbursement subchapter, *see* TEX. FAM. CODE ANN. § 3.401, or elsewhere in the Family Code. Leslea asserts that a reduction in principal is not a "capital improvement to property." In *Nelson v. Nelson*, the Eastland court of appeals interpreted the former economic contribution statute, which had included a statutory right of reimbursement for the reduction of the principal amount of a prenuptial debt secured by a lien on property owned before the marriage, and held that "[t]he payment of an antecedent debt for the acquisition of property, without more, is not a capital improvement to property." 193 S.W.3d 624, 629 (Tex. App.—Eastland 2006, no pet.). In cases applying the former economic contribution statute, home repairs and maintenance also were not capital improvements. *See Garza v. Garza*, 217 S.W.3d 538, 547 (Tex. App.—San Antonio 2006, no pet.); *Moroch v. Collins*, 174 S.W.3d 849, 865 (Tex. App.—

---

estate of the spouse on whose property the lien attached; and (D) incurred for the acquisition of, or for capital improvements to, property").

[7] *Id.* § 3.402(a)(8) (covering "capital improvements to property other than by incurring debt").

[8] *Nelson v. Nelson*, 193 S.W.3d 624, 632–33 (Tex. App.—Eastland 2006, no pet.).

[9] *Zieba*, 928 S.W.2d at 788–89.

[10] *Allen v. Allen*, 704 S.W.2d 600, 606 (Tex. App.—Fort Worth 1986, no writ).

Dallas 2005, pet. denied). In contrast, for purposes of the former economic contribution statute, courts have treated items such as the addition of tile to a home[11] and construction of a garage and home remodeling[12] as capital improvements.

Thus, a plain reading of section 3.402(d) indicates that where a claimant particularly seeks reimbursement for funds expended by a marital estate for improvements, which would include capital improvements, to another marital estate, any reimbursement would be measured by the increase in value to the benefited estate. Therefore, if Leslea sought reimbursement for funds expended by the community estate for improvements, including capital improvements, to Gerald's separate estate, any reimbursement would have to be measured by the enhancement in value to Gerald's benefited estate.

**2. The trial court did not find that Leslea sought reimbursement for funds expended by the community estate for improvements.**

Here, the trial court found that the community estate was entitled to reimbursement from Gerald's separate estate in the amount of $154,073 ($128,962 in principal reduction on the Glenwood property and $25,111 for a tax refund used for repairs to the Glenwood property), and specifically found that it had considered the community-reimbursement claims in making its property division. The record contains evidence showing how much the principal was paid down on the initial mortgage and then on the refinanced mortgage taken out on the Glenwood

---

[11] *Zoller v. Zoller*, No. 01-09-00992-CV, 2011 WL 1587358, at *5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.) (mem. op.).

[12] *Moroch*, 174 S.W.3d at 863–64.

29

property. The record also contains evidence showing that the parties took out a home equity loan on the Glenwood property, which went toward a down payment on a property in Corpus Christi, and showing how much the principal was paid down on this loan. Gerald does not dispute that the amount of principal paid down on the three loans totaled $128,962 or that the principal reduction came from community funds. Finally, Leslea testified that the parties' 2008 tax refund of $25,111 went toward debts related to window repairs on the Glenwood property; Gerald testified that those repairs only totaled $13,000 and were covered by warranty.

The trial court issued no finding acknowledging any improvements or capital improvements to the Glenwood property; and to the extent Leslea sought reimbursement based on any improvements or capital improvements, as opposed to repairs, the court impliedly denied that claim.[13]

### 3. The trial court's reimbursement award did not concern any improvements under section 3.402(d).

Leslea contends that the bulk of the reimbursement award was based on a claim under a different statutory provision, section 3.402(a)(3), applicable to "the reduction of the principal amount of a debt secured by a lien on property owned before marriage, to the extent the debt existed at the time of marriage." *See* TEX. FAM. CODE ANN. § 3.402(a)(3). We agree. The reduction in principal of the initial and refinanced mortgages reasonably fall under subsections (a)(3) and (a)(7),[14]

---

[13] Leslea provided further testimony regarding, and included in her trial inventory and proposed property division, a $60,000 reimbursement claim for home remodeling to the Glenwood property.

[14] Section 3.402(a)(7) covers "the refinancing of the principal amount described by Subdivisions (3)-(6), to the extent the refinancing reduces that principal amount in a manner

respectively, of section 3.402. In addition, the reduction in principal of the home equity loan falls under subsection (a)(5), and the tax refund used for home repairs reasonably falls under subsection (a)(1)[15] or (a)(9).[16] To the extent that a reimbursement claim under subsection (a)(5) could involve any "capital improvements," the evidence here showed that the home equity loan went toward the acquisition of—not any capital improvements to—property in Corpus Christi. Thus, none of the reimbursement claims awarded concerned improvements, and therefore, the trial court was not required to measure any of these claims by the enhancement in value to Gerald's separate estate under section 3.402(d). *See id.* § 3.402(d).

### 4. The trial court did not abuse its discretion.

Next, we consider whether the trial court abused its broad discretion in evaluating the reimbursement claims. With regard to the reduction in principal finding, aside from attacking the lack of evidence showing value enhancement to the Glenwood property, Gerald presents no additional legal or factual sufficiency challenge. Instead, Gerald argues that the court issued an improper "dollar for dollar" reimbursement on the reduction of principal, without considering any tax or community benefits. However, under section 3.402, if Gerald sought any offsets to a claim for reimbursement, he was required to prove the offsets. *See id.* § 3.402(e). Gerald presented no evidence tending to show the existence of, and his separate

---

described by the applicable subdivision." TEX. FAM. CODE ANN. § 3.402(a)(7). Here, the subsection (a)(7) refinancing concerned the initial mortgage on the Glenwood property under subsection (a)(3).

[15] *Id.* § 3.402(a)(1) (covering "payment by one marital estate of the unsecured liabilities of another marital estate").

[16] *Id.* § 3.402(a)(9) (covering "the reduction by the community property estate of an unsecured debt incurred by the separate estate of one of the spouses").

estate's entitlement to, any such offsets,[17] much less their amounts. Moreover, section 3.402(c) forecloses any complaint by Gerald about the trial court's failure to offset any community benefits for use and enjoyment of the Glenwood property. *Id.* § 3.402(c) ("[T]he separate estate of a spouse may not claim an offset for use and enjoyment of a primary or secondary residence owned wholly or partly by the separate estate against contributions made by the community estate to the separate estate.").

With regard to the tax refund, Gerald contends that Leslea's evidence concerning the repairs to the Glenwood property was legally and factually insufficient to support the trial court's $25,111 reimbursement finding. We review sufficiency challenges to trial court findings of fact by the same standards we apply in reviewing a jury's findings. *Zagorski*, 116 S.W.3d at 314. That is, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *Harrison*, 321 S.W.3d at 901–02. Here, Leslea testified she was "one hundred percent positive" that Gerald used all of their 2008 tax refund—in the amount of $25,111—to pay back debt on window repairs to the Glenwood property. In contrast, Gerald testified that the repairs cost about $13,000 and that they were covered under warranty. As trier of fact, the trial court was entitled to credit Leslea's testimony regarding the tax refund and its use toward, and the amount of, Gerald's separate-property repair debt. We conclude

---

[17] Certain Texas appellate courts have concluded that no offsetting benefits even could exist here, where the trial court only recognized reimbursement on the principal reduction for the property, as opposed to reimbursement for interest, taxes, or insurance. *See, e.g., Rogers v. Rogers*, 754 S.W.2d 236, 240 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Nelson v. Nelson*, 713 S.W.2d 146, 148 (Tex. App.—Texarkana 1986, no writ).

that fair-minded people could find the community estate was entitled to reimbursement for the $25,111 tax refund. Thus, Gerald's legal sufficiency argument fails. With regard to a factual sufficiency challenge, we examine the entire record, and after considering and weighing all the evidence, we only set aside the fact finding if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Ahmed v. Ahmed*, 261 S.W.3d 190, 194 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Here, based on such review, we cannot say that the trial court's $25,111 reimbursement award is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust.

Accordingly, we cannot say that the trial court abused its discretion in ordering the community reimbursed for amounts spent in repairing the Glenwood property and reducing the principal amount of debt on it. We overrule Gerald's third issue.

### D. Did the trial court abuse its discretion in its division of the community estate?

In his final issue, Gerald essentially asserts that the trial court erred in awarding Leslea $125,000 as her separate property and in making a $154,073 reimbursement award to the community estate, and that these errors prevented the court from making a just and right division of the community estate.

Gerald has not presented this court with any specific complaints beyond those described in detail and overruled above. Here, the trial court heard two days of testimony, including from the parties, their tax preparer licensed by the Treasury Department, and two expert CPAs; admitted over 30 exhibits; and issued a final divorce decree, along with two sets of findings of fact and conclusions of law. Based on our review of the record here, and not being presented with any specific

efforts to rebut the presumption of the trial court's proper exercise of its broad discretion, we cannot conclude that the court acted arbitrarily, unreasonably, or without regard to any guiding rules or principles. Therefore, we overrule Gerald's fourth issue.

## VI.  CONCLUSION

Because the record supports the trial court's express findings that the $125,000 debt was due to Leslea as her separate property as a derivative of the prior divorce award and that the community estate was entitled to reimbursement from Gerald's separate estate for reduction in principal of and repairs to the Glenwood property, and its omitted finding that the equitable lien it was imposing on the Glenwood property was an implied purchase-money lien, we conclude that the trial court did not abuse its discretion in awarding Leslea a $125,000 money judgment, to be secured against the Glenwood property, and in ordering that Gerald's separate estate reimburse the community estate in the amount of $154,073 as part of its property division. Finding no error in the trial court's specific awards, we further conclude that Gerald has failed to overcome the presumption that the trial court did not abuse its discretion in dividing the community property. We accordingly affirm the trial court's judgment.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Frost, Christopher, and Jamison. (Frost, J., concurring).

34