**Affirmed and Memorandum Opinion filed May 23, 2013.**



In The

# Fourteenth Court of Appeals

_____

### NO. 14-12-00060-CV

_____

### GARY WILLMORE, Appellant

### V.

### KAREN A. QUIGLEY, Appellee

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Court Cause No. CV72197**

## M E M O R A N D U M    O P I N I O N

This appeal involves two parallel divorce proceedings, one in Texas and one in Canada.[1] In two issues, appellant Gary Willmore complains that the Texas trial court did not order reimbursement to him for the community estate's economic contribution to property in Canada that the trial court in the Canadian divorce had previously awarded to appellee Karen A. Quigley. We affirm.

---

[1] The Supreme Court transferred this appeal to us from the Beaumont Court of Appeals.

## *Background*

The parties were married in 1999. Each initiated separate divorce proceedings in November 2006. Willmore filed in Texas, and Quigley filed in Nova Scotia, Canada.[2] The trial court in the Texas case signed a final decree of divorce on September 3, 2008. The decree granted the divorce, determined custody, visitation and support issues regarding Willmore and Quigley's son, and divided the marital estate. On October 21, 2008, the trial court presiding over the Canadian divorce proceeding entered an order declaring "Quigley shall be the sole owner of all real and personal property in her name and possession in Nova Scotia," except for a few items of personal property belonging to Willmore. On November 25, 2009, the Beaumont Court of Appeals affirmed the granting of divorce in the Texas proceeding, but reversed the remainder of the divorce decree and remanded the case for proceedings consistent with the opinion. *Quigley v. Willmore*, 09-08-00517-CV, 2009 WL 4062180, at *1 (Tex. App.—Beaumont Nov. 25, 2009, no pet.) (mem. op.). On remand, Willmore sought a disproportionate share of the marital estate in his favor, an award of his separate property, reimbursement, and attorney's fees. Quigley sought retroactive child support, division of the marital estate, an award of her separate property, reimbursement, and attorney's fees. The remanded issues were retried to the bench.

---

[2] Quigley also filed a proposal to resolve debt with her creditors under the Canadian Bankruptcy and Insolvency Act on April 4, 2007. The proposal was approved by the Canadian court on June 1, 2007.

The following evidence was adduced at trial, in relevant part. When the parties were married, Quigley owned real property in Nova Scotia (the Milford Farm) as her separate property, which included a house, a garage, and two barns on five acres.[3] Quigley testified Milford Farm was worth approximately $200,000 when she married Willmore. During the marriage, significant improvements were made to Milford Farm. The parties built a lighted horse riding arena, horse stalls, and a tractor barn and installed a bathtub in the house on the property. Willmore testified the arena cost $160,000 in Canadian dollars. He also testified the community estate spent approximately $350,000 improving Milford Farm. Quigley testified the arena cost approximately $120,000, but said it was paid for by mortgage proceeds. She testified she increased the existing mortgage on the farm to pay for the arena and was still making mortgage payments at the time of trial. The arena was rebuilt with insurance proceeds in 2004 after having been destroyed. Quigley testified it cost approximately $130,000 to rebuild the arena. She also testified they used insurance proceeds to build the stalls and the tractor barn, which cost about $30,000. She testified installing the bathtub cost around $4,000.[4]

During the marriage, the parties also purchased real property in Cleveland, Texas (the Cleveland Farm). Quigley testified she received a personal injury settlement of $57,000 that was used to pay for moving horses and farm equipment from Milford Farm to Cleveland Farm and to pay for improvements to that

---

[3] After the marriage, the parties purchased an additional 20 acres and subsequently sold it in exchange for money and a five-acre lot attached to the Milford Farm. Another five-acre lot that was purchased during the marriage was foreclosed on as part of Quigley's bankruptcy. Quigley testified that the property survived the foreclosure, but did not clarify that. Apparently, she still owned that property at the time of trial. Willmore conceded that all the Canadian real property was Quigley's separate property at the time of trial and expressly limited his claim at trial to reimbursement.

[4] It is unclear whether these amounts were in United States or Canadian dollars, which is irrelevant for purposes of our analysis. The arena burned down in 2010 after the finalization of the divorce, and Quigley and her current husband received insurance proceeds for that as well.

3

property.[5] She said the funds, along with money she borrowed, were used to build a stable, a riding ring, and two barns and to repair a ranch house on the property. She testified transporting the horses and equipment cost approximately $17,000, and the remaining $40,000 of the personal injury settlement was applied to the improvements. At trial, she sought a reimbursement for economic contribution to the community estate from her separate property personal injury proceeds.

The trial court entered a Final Decree on April 27, 2011. Willmore was awarded personal property, cash and interest subject to his control, 50% of the cash accounts in his control as of August 6, 2008, all sums in any retirement account in Willmore's name, a 2003 Ford F-350, and a mobile home located on the Cleveland Farm. Quigley was awarded personal property, cash and interest subject to her control, 50% of cash accounts in her control as of August 6, 2008, all sums in any retirement account in her name, a 1969 Austin-Healey, her law practice, livestock, tack, and related equipment in her possession or subject to her control, and the real property located in Nova Scotia previously awarded to her by the Canadian court. The trial court also assigned individual debts to Willmore and Quigley. The trial court ordered the parties to sell the Cleveland Farm and split the net proceeds equally. The parties were ordered to pay their own attorney's fees and costs. The trial court did not award reimbursement to either party.

### *Discussion*

In two issues, Willmore (1) challenges the legal and factual sufficiency of the evidence to support the trial court's decision not to award him reimbursement for the economic contribution from the community estate to Quigley's separate estate in Canada and (2) contends the trial court abused its discretion in ordering a

---

[5] Willmore testified that the parties bought "a lot" of horses during their marriage, including a $40,000 Olympic horse. Several horses were moved from Canada to the Cleveland Farm and subsequently moved back to Canada where Quigley sold some of them.

division of property that is not just and right. We discuss these related issues together.

Under section 7.001 of the Texas Family Code, the trial court must divide community property in a "just and right" manner. Tex. Fam. Code § 7.001; *Aduli v. Aduli*, 368 S.W.3d 805, 819 (Tex. App.—Houston [14th Dist.] 2012, no pet.). It is well established that a trial court may exercise wide discretion in ordering a property division. *Aduli*, 368 S.W.3d at 819. The division of property need not be equal, and it is presumed that the trial court properly exercised its discretion in determining the value and division of marital property. *Id.* We review an alleged error in dividing marital property for an abuse of that discretion by a division or an order that is manifestly unjust and unfair. *Id.*; *see also Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.) Legal and factual sufficiency are relevant factors, rather than independent bases for reversal, in determining whether the trial court abused its discretion. *Aduli*, 368 S.W.3d at 819; *see also London v. London*, 94 S.W.3d 139, 143–44 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support the decision. *Barras v. Barras*, 14-11-00954-CV, 2013 WL 266250, at *4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, no pet.). A trial court abuses its discretion if it acts unreasonably or arbitrarily, or without reference to any guiding rules or principles. *Id.*

In a nonjury trial, when no findings of fact or conclusions of law are filed or requested, as here, we infer that the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). When, as here, a complete record is brought forward on appeal, these implied findings may be challenged for legal and factual sufficiency. *Id.* at 84.

The same legal-sufficiency standard of review applies to findings by a trial court and findings by a jury. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In evaluating legal sufficiency, we credit evidence that supports the judgment if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is more than a scintilla of evidence to support the finding, the legal-sufficiency challenge fails. *Aduli*, 368 S.W.3d at 814 (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). For factual sufficiency, we consider all of the evidence and set aside the order only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the findings. *Id.* (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

Reimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Barras*, 2013 WL 266250, at *13. The parties agreed at trial that, to the extent Willmore has a claim for reimbursement, the now repealed economic contribution and reimbursement statutes apply. Under former section 3.403 of the Family Code, "A marital estate that makes an economic contribution to property owned by another marital estate has a claim for economic contribution with respect to the benefitted estate." Act of May 28, 2003, 78th Leg., R.S., ch. 230, § 1, sec. 3.403(a), 2003 Tex. Gen. Laws 1056, 1056, *repealed by* Act of May 19, 2009, 81st Leg., R.S., ch. 768, § 11(3), 2009 Tex. Gen. Laws 1950, 1953. In a claim for reimbursement, the court shall take into account all the relative circumstances of the spouses, determine the rights of both spouses, apply equitable principles to

6

determine whether to recognize the claim, and order a division of the claim for reimbursement, if appropriate, in a manner that the court considers just and right, having due regard for the rights of each party. *Hailey v. Hailey*, 176 S.W.3d 374, 384 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing Tex. Fam. Code § 7.007).

The trial court's discretion in evaluating a claim for reimbursement is as broad as its discretion to effect a just and proper division of the community estate. *Id.* (citing *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988) ("In the final analysis, great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement.")). A party claiming the right of reimbursement must plead and prove that the expenditures and improvements were made and that they are reimbursable. *Id.* (citing *Vallone v. Vallone*, 644 S.W.2d 455, 458-59 (Tex. 1982)). Claims for reimbursement may be offset against each other if the court determines that is appropriate. *Id.* (citing former Tex. Fam. Code § 3.408(c)). The trial court must consider the facts and circumstances, and determine what is just, fair, and equitable. *Id.* (citing *Penick*, 783 S.W.2d at 197).

Here, the Canadian trial court's order awarding Quigley all real property in her name in Nova Scotia was entered before the Texas trial court's 2011 Final Decree containing a division of property.[6] At trial, Quigley argued Willmore should have asserted his claim for reimbursement in the Canadian divorce and thus Willmore was precluded from bringing his reimbursement claim in Texas. *See Gannon v. Payne*, 706 S.W.2d 304, 307 (Tex. 1986) ("Once a final judgment is reached in one of [two parallel] actions[, one foreign and one domestic], the second

---

[6] The trial court's original divorce decree containing a division of property, which was entered before the Canadian order, was reversed by the Beaumont Court of Appeals, as set forth above. *See Quigley*, 2009 WL 4062180, at *1. The trial court noted it did not have jurisdiction over the Nova Scotia real property and did not award that property to either party in the first divorce decree. *Id*. at *2 n.1.

forum is usually obliged to respect the prior adjudication under the rules regarding the enforcement of foreign judgments."). The trial court likewise expressed concern that it could not adjudicate any issues with regard to the property in Nova Scotia.[7] Willmore admitted that he had received "notices" of the divorce proceeding in Canada.[8] Moreover, he did not assert that the Canadian court lacked jurisdiction or present any evidence that he had been precluded from asserting a reimbursement claim in the Canadian proceeding. During a hearing to enter the 2011 Final Decree, the trial court expressly stated that it had considered the Canadian order and agreed that Willmore was "divested of all, right, title[,] interest and claim to . . . all real property located in Nova Scotia."[9] The trial court reasonably could have concluded that Willmore did not show he was entitled to

---

[7] The trial judge stated, "I'm concerned about the order—the property up in Canada. . . . And y'all have failed to give me any real substantive information about the nature of some of these things. I feel comfortable dealing with that which I have grown up with, and that's property law in Texas."

[8] [Quigley's counsel: D]id you get notice of a proceeding, the one in Canada dealing with the separation or division of the property between you and Ms. Quigley?

[Willmore:] I guess. I got multiple.

[Quigley's counsel:] You got multiple notices?

[Willmore:] Multiple court notices for different types.

[Quigley's counsel:] As a matter of fact, you have called and written those courts before, haven't you?

. . . .

[Willmore:] I've written to the court several times.

[Quigley's counsel:] So you were aware of proceedings dealing with the division of your property between you and Ms. Quigley going on in Canada?

[Willmore:] I'm aware of what the Supreme Court of Canada Appeals Division [sic] awarded. Yes.

[9] The trial court stated, "There is a decree from the Court in Nova Scotia that says that it is [Quigley's] separate property. And I took that into consideration whenever I was going through [the division of property]."

reimbursement in the Texas proceeding.

The trial court heard additional evidence in support of its decision not to award Willmore a reimbursement:

- Quigley's testimony that improvements were made to Milford Farm with community debt mortgage proceeds for which she personally was making payments at the time of trial;

- Quigley's testimony that other improvements were made to Milford Farm with insurance proceeds;

- Quigley's testimony that she used $40,000 of her separate personal injury settlement proceeds toward improvements on the Cleveland Farm, *see Hailey*, 176 S.W.3d at 384 (noting trial court may offset claims for reimbursement against each other);

- Quigley's personal payments of community debts in Canada after the divorce proceedings were initiated and her bankruptcy commenced; and

- The Canadian bankruptcy court's approval of Quigley's proposal in bankruptcy, which valued the equity in Milford Farm at $14,500 as of April 2007, *see* former Texas Family Code section 3.403(b) (taking into account equity in benefitted property for purposes of determining amount of economic contribution claim).

We conclude the record contains evidence of a substantive and probative nature to support the trial court's decision that the community estate was not entitled to reimbursement for economic contribution to Milford Farm. With regard to the factual-sufficiency challenge, the trial court also heard Willmore's testimony that the community estate spent $350,000 improving Milford Farm and that Quigley took horses owned by the community from Cleveland Farm to Milford Farm and benefitted from the sale of some of them. We cannot say that the trial court's decision not to award a reimbursement for economic contribution to Milford Farm is so contrary to the overwhelming weight of the evidence to be clearly wrong and

9

unjust. Accordingly, Willmore's legal and factual sufficiency challenges fail.

Willmore also argues that the trial court abused its discretion in failing to evaluate Quigley's separate estate in Canada in making its property division. First, Willmore has not shown that the trial court failed to do so. As set forth above, the trial court heard evidence regarding the valuation of the Canadian real estate, in addition to evidence of community debts in Canada paid by Quigley. Second, even if the trial court did not evaluate the property in Canada, the trial court reasonably could have concluded that these issues should have been raised in the Canadian divorce proceeding. *See Gannon*, 706 S.W.2d 307 (recognizing, in parallel proceedings, second forum must defer to final judgment entered in first forum). Willmore also complains that Quigley wasted community assets by receiving rent on her separate property that was not used to benefit the community, allowing community property in Nova Scotia to go into foreclosure, and selling horses at no profit. Willmore does not explain how Quigley's failing to use rent money from her *separate property* to benefit the community could waste community assets. Likewise, Willmore does not explain how the trial court could address the disposition of property that the Canadian trial court had previously awarded to Quigley (both the real property and horses). Taking all the evidence presented at trial into consideration, we conclude the trial court did not abuse its discretion in its division of the marital estate.

We overrule Willmore's two issues.[10]  We affirm the judgment of the trial court.


/s/      Martha Hill Jamison
Justice


Panel consists of Justices Frost, Christopher, and Jamison.

---

[10] Quigley argues this is a frivolous appeal and urges us to assess sanctions against Willmore under Texas Rule of Appellate Procedure 45.  We decline to do so.  *See Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc) ("[T]he decision to award [sanctions] is a matter within this court's discretion, which we exercise with prudence and caution after careful deliberation.").