# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00546-CV

**Jeffrey Benjamin Mason, Appellant**

**v.**

**Keri Cotterman Mason, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-FM-16-001306, HONORABLE LORA LIVINGSTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Jeffrey Benjamin Mason appeals from the trial court's divorce decree awarding his former wife, Keri Cotterman Mason, a majority of the couple's community estate.[1] In ten issues, Jeff challenges the trial court's decision to reconstitute the community estate for certain "wasteful" expenditures and to reimburse the community estate for funds transferred to a limited liability company owned and operated by Jeff. For the reasons set forth below, we will affirm the trial court's judgment.

## BACKGROUND

Jeff and Keri were married in 2010, and Keri filed an original petition for divorce in 2016. Keri subsequently amended her petition to assert claims for "waste and/or constructive

---

[1] Because the parties share the same surname, we will refer to the parties by their first names for clarity.

fraud" and for reimbursement. The couple did not have children, and it is undisputed that before and during the marriage, Jeff was the sole member and manager of a limited liability company, 338 Industries, LLC. The final hearing before the trial court centered on property issues related to certain expenditures made by Jeff and on payments made by and to 338 Industries.

At the conclusion of the hearing, the trial court signed a divorce decree that granted the divorce and awarded Keri a larger share of the community estate, 55% to Keri and 45% to Jeff. In dividing the estate, the trial court first granted Keri's constructive-fraud claim based on certain "wasteful" expenditures made by Jeff and, accordingly, reconstituted the community estate by adding $752,324 to the community estate. The trial court also characterized 338 Industries, LLC as Jeff's separate property and reimbursed $283,051 to the community estate from Jeff's separate estate for outstanding loans made to 338 Industries. Finally, the trial court awarded Keri her attorney's fees.

Upon Jeff's request, the trial court issued findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. In five related and overlapping issues on appeal, Jeff challenges the trial court's findings of fact and conclusions of law related to Keri's constructive-fraud claim. In five additional issues, Jeff asserts that the evidence is insufficient to support the trial court's findings of fact and conclusions of law supporting Keri's reimbursement claim.

**STANDARD OF REVIEW**

A trial court in a divorce proceeding is charged with ordering a division of the community estate in a manner that the court deems "just and right, having due regard for the rights of each party." *See* Tex. Fam. Code § 7.001. The trial court does not have to divide the community property equally, but the division must be equitable and the record must reflect a reasonable

2

basis for an unequal division of the property. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). On appeal, we review the trial court's division of marital property for an abuse of discretion. *Murff*, 615 S.W.2d at 698. Because trial courts have wide latitude in evaluating claims for reimbursement, we also review a trial court's decision concerning a claim for reimbursement for an abuse of discretion. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1998). A trial court abuses its discretion if it "'act[s] without reference to any guiding rules or principles,' such that its ruling [is] arbitrary or unreasonable." *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).

In family-law cases, the abuse-of-discretion standard overlaps with traditional standards for reviewing the sufficiency of the evidence. *See Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Consequently, legal and factual insufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 588. To determine whether there has been an abuse of discretion, we engage in a two-pronged inquiry, determining whether (1) the trial court had sufficient evidence upon which to exercise its discretion and (2) the trial court erred in its application of that discretion. *Id.* Traditional standards for legal- and factual-sufficiency review come into play with regard to the first question.[2] *Id.*

---

[2] Under the legal-sufficiency standard, we credit all evidence and inferences favorable to the trial court's decision if a reasonable factfinder could, and disregard all evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 828 (Tex. 2005). Evidence is legally insufficient when (1) there is a complete absence of a vital fact; (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810, 815-16. Under the factual-sufficiency

In an appeal from a bench trial in which the trial court entered findings of fact, the trial court's findings have the same weight as a jury verdict. *Hailey v. Hailey*, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Because the trial court acts as the factfinder in a bench trial, the trial court is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The trial court may consider all the facts and circumstances in connection with the testimony of each witness and accept or reject all or part of that testimony; an appellate court may not substitute its judgment for the trial court's assessment of witnesses' testimony in a bench trial. *Hailey*, 176 S.W.3d at 383. The trial court does not abuse its discretion if it bases its decision on conflicting evidence or when evidence of a probative or substantive character exists to support the decision. *Zeifman*, 212 S.W.3d at 587. "The mere fact that a trial court decided an issue in a manner differently than an appellate court would under similar circumstances does not establish an abuse of discretion." *Id.*

## ANALYSIS

### Constructive Fraud

We turn first to Jeff's issues concerning the trial court's determination that he wasted $752,324 in "community resources" and its decision to reconstitute the community estate by this amount.

---

standard, we examine all the evidence in a neutral light and consider whether the trial court's decision is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

"A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse." *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex. App.—Houston [14th Dist.] 1996, no writ); *see Dyer v. Dyer*, No 03-16-00753-CV, 2018 Tex. App. LEXIS 4380, at *18 (Tex. App.—Austin June 15, 2018, no pet.) (mem. op.) (quoting same). "Waste occurs when one spouse, dishonestly or purposefully with the intent to deceive, deprives the community estate of assets to the detriment of the other spouse." *Giesler v. Giesler*, No. 03-08-00734-CV, 2010 Tex. App. LEXIS 4401, at *10-11 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.) (citing *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998)). "A presumption of 'constructive fraud,' i.e., waste, arises when one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent." *Puntarelli v. Peterson*, 405 S.W.3d 131, 137-38 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see Cantu v. Cantu*, 556 S.W.3d 420, 427 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that fraud is presumed whenever one spouse disposes of community property without other spouse's knowledge or consent). Once this presumption of fraud arises, the burden shifts to the disposing spouse to prove that the disposition of the community property was fair. *Cantu*, 556 S.W.3d at 427. When the trial court makes a finding of constructive fraud, it must perform two calculations: the first is the "value by which the community estate was depleted as a result of the fraud on the community," and the second is "the amount of the reconstituted estate." *Id*. (quoting Tex. Fam. Code § 7.009(b)). The "reconstituted estate" is defined as the total value of the community estate that would have existed had a fraud on the community not occurred. *Id.* (citing Tex. Fam. Code § 7.009(a)).

With respect to Keri's claim of constructive fraud, the trial court made the following relevant findings:

5

During the marriage and during the pendency of the suit for divorce, Jeff Mason spent funds gambling, traveling, going to hotels in Austin, Texas (where the parties' primary residence is located) while his wife was away, and frequenting bars and adult entertainment venues. Some of these expenditures were paid directly by Jeff Mason's business. $752,324 of these expenditures were not for legitimate business expenses, despite how Jeff Mason may have categorized the expenditures in bookkeeping records, tax filings, and/or testimony. The $752,324 were personal expenditures that were wasteful. Hence, the payment of those expenses with funds of Jeff Mason's separate property was, in fact, a distribution to Jeff Mason, which Jeff Mason wasted to the detriment of the community.

. . .

Keri Cotterman Mason did not discover Jeff Mason's wasteful spending until several days before filing divorce and thereafter, during the discovery process during this case.

Jeff Mason's wasteful spending during the parties' marriage and during the time that the divorce was pending and the Travis County Standing Order was in effect, was done without Keri Cotterman Mason's knowledge or consent and was in violation of the Travis County Standing Order.

. . .

Certain of Jeff Mason's wasteful expenditures were paid from accounts of 338 Industries, LLC, but the expenditures were in the nature of personal expenditures and member draws—not business expenses. Jeff Mason controlled the characterization of such expenditures in the books of 338 Industries, LLC and his characterization is not determinative of the Court's ultimate characterization. Member draws are a distribution and are, therefore, community income. Jeff Mason received the personal benefit of these expenditures, but they were wasteful of community resources and a breach of his duties to Keri Mason and the community estate . . . .

On appeal, Jeff does not dispute that 338 Industries paid some expenditures for gambling, hotels, bars, and adult entertainment, namely strip clubs, nor does Jeff dispute that these expenditures were incurred and paid for without Keri's consent. Instead, in two sub-issues, Jeff asserts that (1) "[t]he trial court's finding that Jeff wasted 'community resources' is both factually

6

unsupported and legally flawed," and (2) the trial court's waste award was an abuse of discretion "because the evidence conclusively established the non-gambling debts were legitimate business expenses." In effect, Jeff challenges the trial court's characterization of the funds used to pay for the expenditures as community property.

Community property consists of all property, other than separate property, acquired by either spouse during the marriage. Tex. Fam. Code § 3.002. In turn, separate property owned or claimed by the spouse before marriage, as well as property acquired during marriage by gift, devise, or descent, is separate property. Tex. Const. art. XVI, § 15; Tex. Fam. Code § 3.001. All property possessed by either spouse during or on dissolution of marriage is presumed to be community property.[3] Tex. Fam. Code § 3.003(a). To overcome the community-property presumption, a party claiming assets as separate property must establish their character by "clear and convincing evidence." *Id.* § 3.003(b). Any doubts as to the proper characterization of property are resolved in favor of community status. *Willett v. Rodriguez*, No. 03-16-00084-CV, 2017 Tex. App. LEXIS 5096, *4 (Tex. App.—Austin June 2, 2017, pet. denied) (mem. op.) (citing *Irvin v. Parker*, 139 S.W.3d 703, 708 (Tex. App.—Fort Worth 2004, no pet.)).

Because a limited liability company is a separate legal entity, property owned by a limited liability company is neither the community property nor separate property of its members. Tex. Bus. Orgs. Code § 101.106(b) ("A member of a limited liability company or an assignee of a membership interest in a limited liability company does not have an interest in any specific property

---

[3] Consequently, revenue and income gained during the marriage, even when produced from separate property, are generally considered community property. *Richardson v. Richardson*, 424 S.W.3d 691, 701 (Tex. App.—El Paso 2014, no pet.); *Bush v. Bush*, 336 S.W.3d 722, 740 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

7

of the company."); *see, e.g.*, *Mandell v. Mandell*, 310 S.W.3d 531, 539 (Tex. App.—Fort Worth 2010, pet. denied) (explaining that property owned by professional association, like corporate property, is neither separate property nor community property). However, distributions from the operation of a limited liability company during marriage are considered community property, even when the membership interest in the company is owned by one spouse as separate property. *In re Marriage of Hudson*, No. 06-18-00011-CV, 2018 Tex. App. LEXIS 7929, at *8 (Tex. App.—Texarkana Sept. 28, 2018, no pet.) (mem. op.); *see Lifshutz v. Lifshutz*, 199 S.W.3d 9, 27 (Tex. App.—San Antonio 2006, pet. denied) (explaining that distributions from partnership are considered community property, "regardless of whether the distribution is of income or of an asset"); *see also* Tex. Bus. Orgs. Code § 101.203 ("Sharing of Distributions"). Here, Jeff does not dispute, and the evidence presented at trial establishes, that Jeff spent over $700,000 on strip clubs in Austin, Texas, and Las Vegas, Nevada; hotel rooms when Keri was out of town and away from their marital home in Austin; and gambling in Las Vegas. The trial court found that these expenditures were not "legitimate business expenses" but instead were Jeff's "personal expenditures." The trial court determined that 338 Industries's payment of those "personal expenditures," totaling $752,324, amounted to a "distribution to Jeff," which he "wasted to the detriment of the community."

The crux of Jeff's argument on appeal is that the evidence is insufficient to support the trial court's determination that the payments for the expenditures by 338 Industries were distributions and therefore community property because, in Jeff's view, the payments were made directly to the various establishments using Jeff's 338 Industries company credit card. In support of his position, Jeff points to evidence in the record showing that the expenditures at issue were

8

treated by 338 Industries and its accountants as bona fide business expenses. For example, Jeff testified that he incurred $314,740 gambling losses in Las Vegas while on business trips and that he therefore considered the gambling losses to be "nondeductible business expenses." The court also heard from 338 Industries's accountant, who testified that she deducted all of the non-gambling expenditures at issue on 338 Industries's federal tax returns as business expenses based on Jeff's characterization of the expenses and that the IRS did not question the expenses when it audited these returns.

The court also heard evidence, however, that Jeff alone made the expenditures, including $314,740 in gambling losses, and that Jeff alone made the decision to use 338 Industries's credit card as payment for the expenditures. Jeff did not testify, or present any other evidence suggesting, that 338 Industries in fact benefitted from the payment of his gambling losses or of any of the other expenditures at issue, and the very nature of the expenditures suggests that they benefitted Jeff personally. In fact, Jeff eventually conceded at trial that the gambling expenses should be treated as member draws, and on appeal, he does not explain why the trial court should have treated the other expenditures (for strip clubs and hotels) any differently.

Upon review of the record, we conclude that the evidence relied on by Jeff, including evidence that Jeff used a 338 Industries credit card for payment, falls short of establishing that the expenditures were "legitimate business expenditures." *See* Tex. Fam. Code § 3.003(b) (party claiming property as separate property must rebut community-property presumption); *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) (where party attacks legal sufficiency of adverse findings on issue on which it bears burden of proof, appellant must show that record conclusively

9

establishes all vital facts in support of issue); *Lifshutz*, 199 S.W.3d at 18 (when party attacks factual sufficiency on issue on which it bears burden of proof, appellant must show that finding is " so against the great weight and preponderance of the evidence that it is clearly wrong and unjust"). Moreover, the trial court's finding that the expenditures paid by 338 Industries "were not legitimate business expenses" and instead were Jeff's "personal expenditures" is supported by legally and factually sufficient evidence. This finding, in turn, supports the trial court's determination that payments of the expenditures operated, constructively, as distributions from 338 Industries to Jeff. *See Lifshutz*, 199 S.W.3d at 24 (upholding trial court's finding that direct transfer of stock owned by husband's partnership to husband's corporate entities was, in effect, distribution from partnership to husband). Because distributions from an LLC are community property and because the undisputed evidence shows that Keri was unaware of the distributions, the trial court did not abuse its discretion in concluding that Jeff had committed constructive fraud. Jeff's issues on appeal challenging the trial court's decision on Keri's claim of waste and constructive fraud are overruled.

**Reimbursement**

Next, we address Jeff's challenge to that portion of the judgment reimbursing the community estate from Jeff's separate property before disproportionately dividing the community estate in favor of Keri.

An equitable right to reimbursement "arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). Section 3.402 of the Family Code governs claims of reimbursement and states that courts shall resolve claims for reimbursement using equitable

10

principles.  Tex. Fam. Code § 3.402 (b); *see also id.* § 7.007 (stating that in divorce decree, court shall determine right of both spouses "in a claim for reimbursement as provided in [sections 3.40 through 3.410 of the Family Code] and shall apply equitable principles").  A claim for reimbursement can arise from a variety of expenditures, *see id.* § 3.402(a) (identifying nine categories of expenditures included within meaning of "claim for reimbursement"), and may run from community estate to separate estate, from separate estate to community estate, and from separate estate to separate estate, *Alenz v. Alenz*, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  A party asserting a claim for reimbursement has the burden of pleading and proving the claim.  *Vallone*, 644 S.W.2d at 459.  Reimbursement is not available as a matter of law but lies within the broad discretion of the trial court.  *Id.*

With respect to Keri's claim for reimbursement the trial court made the following findings and conclusions:

> The community estate is entitled to reimbursement for $283,051 from Jeff Mason's separate estate for loans from the community estate to 338 Industries, LLC and to fund non-party employee retirement.  Jeff Mason's transfer of $283,051 from the community estate improved his separate property business.  Keri Cotterman Mason's request for additional reimbursements is denied.
>
> . . .
>
> The community estate should be reimbursed by Jeff Mason's separate estate in an amount of $283,051.  The equities do not justify that this reimbursement should be off-set.

On appeal, Jeff does not dispute that community funds were transferred to 338 Industries.  Instead, in what we discern as three separate arguments, Jeff asserts that the "trial court's

11

judgment awarding reimbursement is both factually insufficient and contrary to law." In his first argument, Jeff asserts that the trial court abused its discretion in granting reimbursement from his separate estate because 338 Industries is a separate legal entity and because there is no evidence that his separate estate—as opposed to 338 Industries itself—benefitted from or was enhanced by the loaned funds. In response, Keri asserts that the trial court's reimbursement decision is proper because the undisputed evidence shows that funds were transferred to 338 Industries's bank account from the couple's community estate, an outstanding balance of $283,051 remains in the LLC's account, 338 Industries is owned and operated solely by Jeff, and consequently, the community is entitled to reimbursement from Jeff's separate estate. To the extent Keri suggests that the community estate is entitled to recover the funds transferred to 338 Industries from Jeff's separate estate based solely on the fact that Jeff is the sole member and manager of 338 Industries, we disagree.

As previously discussed, property owned by a limited liability company is neither the community property nor the separate property of its members and, as a result, is not subject to award or division in divorce. *See* Tex. Bus. Orgs. Code § 101.106(b); *Lifshutz*, 199 S.W.3d at 27. Consequently, as Jeff correctly points out, his separate marital estate does not, and cannot, include property, funds, or assets that belong to 338 Industries. In addition, when the funds were transferred from Jeff and Keri's community estate to 338 Industries, the funds lost their community character and became the property of the LLC. *See In re Marriage of Hudson*, 2018 Tex. App. LEXIS 7929, at *8 (explaining that when property is conveyed to business entity, "such as a partnership or limited liability company, it becomes the property of the entity and loses its separate or community character" (citing *Lifshutz*, 199 S.W.3d at 27)). The community estate could not, in this divorce proceeding,

12

recover the outstanding loan directly from 338 Industries, and in the absence of a finding of constructive fraud, the community estate could not recover the loan from Jeff's separate estate based solely on the fact that Jeff is a sole member and manager of 338 Industries.[4]

The community estate could, however, seek reimbursement of the transferred funds based on Jeff's membership interest in 338 Industries. Although LLC members do not hold ownership interests in LLC property, each member does own a "membership interest" in the LLC, which is personal property and subject to characterization as community or separate property. Tex. Bus. Orgs. Code § 101.106(a), (a–1); *see id.* § 1.002(54) (defining "membership interest"). To the extent the trial court found that Jeff "owned 338 Industries" before his marriage to Keri and that 338 Industries is his separate property, we construe this as a finding that Jeff's separate estate includes his membership interest in 338 Industries, LLC. To prevail on a claim for reimbursement based on Jeff's membership interest, Keri was required to prove that Jeff's membership interest in 338 Industries was "benefitted or enhanced" by the community estate, i.e. by the loans to 338 Industries. *See Vallone*, 644 S.W.2d at 459; *Richardson v. Richardson*, 424 S.W.3d 691, 700 (Tex.

---

[4] "In exceptional circumstances, the principles of alter ego and piercing the corporate veil have been applied to divorce cases under what could be termed 'reverse piercing.'" *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 516 (Tex. App.—San Antonio 2001, pet. denied). When the corporate veil is pierced in a divorce case, the trial court may characterize assets that otherwise belong to the corporation as belonging to the community. *Id*. Although a claim of alter ego is not a per se claim for reimbursement, it may in some instances, as it would here, have the same effect. The trial court, however, did not find that 338 Industries operated as Jeff's alter ego, and although pleaded by Keri, she has not challenged the trial court's failure to make a finding of alter ego. We cannot uphold the trial court's reimbursement ruling on an alter ego theory. *See Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.) ("In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues."); *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696-97 (Tex. 1986) ("Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding.").

13

App.—El Paso 2014, no pet.) ("The party claiming reimbursement bears the burden of establishing that the contribution was made by one marital estate to another, the contribution was reimbursable, and the value of the contribution."). On appeal, Jeff challenges the trial court's finding that his separate property was benefitted by the transferred funds because, in Jeff's view, there is no evidence that his membership interest in 338 Industries became more valuable as a consequence of the loans.

At trial, evidence was presented that after Keri's petition for divorce was filed, 338 Industries had $54,000 in its bank account, and the parties agreed to transfer $599,000 to 338 Industries from the community estate as loans. Of the loans, $50,000 was repaid to the community estate, approximately $266,000 was used to fund retirement contributions for Jeff and Keri, and $33,051 was used to fund non-party employee retirements. Of the remaining funds loaned to 338 Industries, Jeff testified that these funds were transferred back to the community over the next year in the form of Jeff's salary. Conversely, Keri testified that Jeff told her that the remaining funds would be used for "cash flow" in 338 Industries and that she did not consider Jeff's salary that year to be a repayment of the debt. Based on the record before it, the trial court could have reasonably determined that the loaned funds benefitted 338 Industries and, in turn, that Jeff's separate property, i.e. his membership interest in 338 Industries, was benefitted indirectly. Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the trial court's determination that the loans from the community estate benefitted Jeff's separate property is supported by legally sufficient evidence, *see City of Keller v. Wilson*, 168 S.W.3d 802, 810, 815-16 (Tex. 2005) (legal-sufficiency standard), and is not so weak as to be clearly wrong and manifestly unjust, *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (factual-sufficiency standard).

14

In his second argument, Jeff asserts that even if there is sufficient evidence that his membership interest somehow benefitted from the transferred funds, there is no evidence that his membership interest realized $283,051 in enhanced value. Jeff contends that the trial court abused its discretion in granting Keri's reimbursement claim because she had the burden to demonstrate the value by which Jeff's membership interest was enhanced as a result of the loans, and according to Jeff, Keri presented no evidence on this issue. Although we agree that Keri did not present evidence of the amount by which Jeff's membership interest was enhanced by the loans, we disagree with Jeff's assumption that enhanced value is the proper measure of the reimbursement claim in this case.

Under Section 3.402(d), "[r]eimbursement for funds expended by a marital estate for improvements to another marital estate shall be measured by the enhancement in value to the benefitted marital estate." Tex. Fam. Code § 3.402(d); *Rogers v. Rogers*, 754 S.W.2d 236, 239 (Tex. App.—Houston [1st Dist.] 1988, no writ). The enhanced value is determined by the difference between the fair market value of the property before and after the improvements. *In re Marriage of McCoy & Els*, 488 S.W.3d 430, 435 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Section 3.402(d) does not apply to all claims for reimbursement, however, but rather only to claims "for funds expended . . . for improvements to another marital estate." *Barras v. Barras*, 396 S.W.3d 154, 175 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting that "[t]he legislature purposefully included the modifying phrase 'for improvement to another marital estate' to limit the type of reimbursement claim required to be measured by the enhancement in value to the benefitted estate"). Other reimbursement claims may be measured by the cost to the contributing estate. *See id.* at 177. For example, under the "reimbursement" theory, when corporate stock is the separate

15

property of one spouse, any increase in value of that stock during marriage remains the separate property of the owner spouse. *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex. 1984). When time or effort expended by both or either spouse contributes to an increase in the value of that corporate stock, the community's reimbursement claim is measured by the value of the time and effort beyond that reasonably necessary to manage and preserve the separate estate for which the community did not receive adequate compensation. *Lifshutz*, 199 S.W.3d at 28 (citing *Jensen*, 665 S.W.2d at 109). That is, the claim for reimbursement in such cases is measured by the cost of the uncompensated time and effort to the community and not by the enhancement in value of the stock.

Here, we cannot conclude that the loans to 338 Industries were for "improvements to another marital estate," i.e., to Jeff's membership interest, within the meaning of Section 3.402(d). *See Barras*, 396 S.W.3d at 175-76 (concluding that "improvements" in Section 3.402(d) refers to capital improvements, such as home construction and renovation, and did not include party's reimbursement claim for "reduction of principal amount of a debt secured by a lien on real property"); *see also In re Marriage of Donathan*, No. 10-16-00014-CV, 2017 Tex. App. LEXIS 7356, at *8 (Tex. App.—Waco Aug. 2, 2017, no pet.) (mem. op.) (concluding that section 3.402(d) did not apply to reimbursement claim for funds used to pay debt on mobile home). Like reimbursement claims for uncompensated time and effort expended to the benefit of stock belonging to another marital estate, a reimbursement claim for funds expended to the benefit of a membership interest belonging to a separate estate may be measured by the cost of the contribution to the community estate. *See Jensen*, 665 S.W.2d at 109. The trial court did not abuse its discretion in concluding that contribution cost was the proper measure of Keri's reimbursement claim, and the undisputed

16

evidence is sufficient to support the trial court's finding that the cost of the loans to the community estate was $283,051.

Finally, Jeff asserts that even if the loaned funds are generally reimbursable, the trial court's decision to reimburse $283,051 to the community estate is, nevertheless, "inequitable and amounts to an abuse of discretion." According to Jeff, over the years of the marriage, the community estate drew significant wages, draws, and retirements from Jeff's interest in 338 Industries. In addition, the loans at issue "enabled 338 Industries to continue to operate," which then allowed for the community to receive Jeff's salary of $309,166 and the payment of Jeff's $414,000 gambling debt. Therefore, according to Jeff, the trial court's reimbursement award to the community constitutes an abuse of discretion because the trial court "ignored significant benefits the community derived from the 2016 'loans' made to 338 Industries, LLC."

Under equitable principles, claims for reimbursement may be offset against each other "if the court determines it to be appropriate." Tex. Fam. Code § 3.402(b). In addition, "[b]enefits for the use and enjoyment of property may be offset against a claim for reimbursement for expenditures to benefit a marital estate." *Id.* § 3.402(c). The party seeking an offset to a claim for reimbursement has the burden of proof with respect to the offset. *Id.* § 3.402(e). We construe Jeff's argument on appeal to be that the trial court's decision to grant Keri's reimbursement claim is inequitable because the court failed to offset the reimbursement claim by "benefits for the use and enjoyment" of his membership interest received by the community. *See id.* § 3.402(c).

In its findings of fact and conclusions of law, the trial court concluded that the evidence was insufficient to support any claim for an offset and that, even if an offset were pleaded

17

and supported by evidence, "the equities do not justify making an offset of the claims for waste and reimbursement." We agree that the record supports Jeff's contention that the community received at least some benefit from Jeff's membership interest in 338 Industries in the form of subsequent distributions and draws. However, viewing the evidence in the light most favorable to the trial court's judgment, we conclude that the trial court could have reasonably inferred that, as a result of the loans, 338 Industries would continue to operate after the divorce and that Jeff would continue to enjoy these same distribution benefits as part of his separate estate.

In evaluating a claim for reimbursement, the court shall determine whether to recognize the claim and order a division of the claim "in a manner that the court considers just and right." Tex. Fam. Code § 7.007(b). "[G]reat latitude must be afforded the trial court in its application of equitable principles to value a claim for reimbursement." *See Lifshutz*, 199 S.W.3d at 29 (citing *In re Marriage of Cassel*, No. 07-96-0268-CV, 1997 Tex. App. LEXIS 2641, at *8 (Tex. App.—Amarillo May 19, 1997, no writ) (not designated for publication)). The trial court must consider the facts and circumstances and determine what is just, fair, and equitable. *Vallone*, 644 S.W.2d at 458-59 (citing *Penick*, 783 S.W.2d at 197). Based on the record before us, and applying this standard, we cannot conclude that the trial court abused its discretion in concluding that the equities do not justify an offset against Keri's claim for reimbursement. We overrule Jeff's issues on appeal challenging the trial court's decision to reimburse the community estate.

**CONCLUSION**

Having overruled all of appellant's issues on appeal, we affirm the trial court's judgment.

18

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Affirmed

Filed:   May 3, 2019