**Affirm and Opinion Filed May 9, 2023**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

No. 05-21-01150-CV

**MARK PAGE, MELISSA PAGE, AND SLINGSHOT VENTURES STORES, LLC, Appellants**

**V.**

**3838 OAK LAWN AVE (TX) OWNER, LLC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-03633**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Rosenberg[1]
Opinion by Justice Partida-Kipness

This is an appeal of a summary judgment rendered in a lawsuit regarding a commercial lease. The landlord, appellee 3838 Oak Lawn Ave Owner, LLC (3838 Oak Lawn) sued the tenant, appellants Slingshot Ventures Stores, LLC (Slingshot) and lease guarantors, Mark and Melissa Page (the Pages) for breaches of the lease and accompanying guaranty. In eight issues, the Pages and Slingshot appeal the granting of summary judgment in favor of 3838 Oak Lawn. We affirm.

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

## BACKGROUND

In 2015, 3838 Oak Lawn's predecessors, TC Propco I, LP and TC Propco II, LP (TC Propco) were the landlords of certain commercial spaces at the Turtle Creek Village Shopping Center in Dallas. In March 2015, Slingshot entered into a lease with TC Propco to operate a fitness center in the shopping center. The Pages[2] and John and Karen Pannell[3] signed as guarantors on Slingshot's lease with TC Propco. The original lease was for 120 months. Monthly rent for the first sixty months was $21,254.17 and $23,379.58 for the remaining sixty months, plus additional monthly expenses. Attached to the original lease was Exhibit G titled "Guaranty," which stated:

> [T]he undersigned (hereinafter referred to individually and collectively as 'Guarantor', whether one or more) hereby jointly and severally guarantee unto Landlord the payment and performance of (i) all of the rental and other sums or charges which may ever become due and payable by Tenant under the Lease, including, without limitation, rental that becomes due and payable by reason of the exercise of any power to accelerate granted to Landlord under the Lease and any damages or other sums that become payable on account of any default by Tenant under the Lease, and (ii) all of the other obligations, liabilities and duties of Tenant under the Lease (the rental, other sums and charges and other obligations, liabilities and duties described in the foregoing clauses (i) and (ii) being hereinafter collectively referred to as the 'Obligations'). For the purposes hereof, the term 'Tenant' shall include any assignee of Tenant and the term 'Lease' shall include any

---

[2] Mark Page signed documents related to the lease on behalf of Slingshot, as well as signed in his individual capacity as a guarantor.

[3] John and Karen Pannell were included in 3838 Oak Lawn's Original Petition as defendants. Karen filed an original answer and general denial. She later declared bankruptcy and 3838 Oak Lawn dismissed the claims against her without prejudice. John was properly served and never responded to this lawsuit. A default judgment was taken against him. Neither of the Pannells are a party to this appeal.

–2–

amendment of the Lease effected by Landlord and Tenant, with or without the consent or knowledge of Guarantor.

. . . .

The obligations of Guarantor shall be irrevocable and unconditional, irrespective of the genuineness, validity, regularity or enforceability of the Lease or any security given for the Obligations or any other circumstances which might otherwise constitute legal or equitable discharge of surety or guarantor, and Guarantor waives the benefit of all principles or provisions of Law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty, and agrees that the obligations of Guarantor shall not be affected by any circumstances, whether or not referred to in this Guaranty which might otherwise constitute legal or equitable discharge of surety or guarantor. Specifically, Guarantor waives the benefits of any right of discharge and any other rights of sureties and guarantors under applicable law. Without limiting the generality of the foregoing, Guarantor agrees that Landlord may, in its sole and absolute discretion, without notice to or consent by the Guarantor, and without in any way releasing or impairing any liability or obligation of Guarantor hereunder, . . . (ii) modify, amend or change any provision of the Lease, (iii) grant extensions or renewals of the Lease or the Obligations, or effect any release, compromise or settlement in connection therewith, including any release of the liability of Tenant or any guarantor or other person liable on the Obligations or any part thereof, (iv) transfer its interest in the premises covered by the Lease or its rights under this Guaranty, (v) consent to the assignment by Tenant of its rights under the Lease, and (vi) deal in all respects with Tenant and the Obligations as if this Guaranty was not in effect. Guarantor further waives (i) notices of acceptance of the Guaranty, (ii) notices to Guarantor of any kind in any circumstances whatsoever, including without limitation, notice of dishonor and notice of any default by Tenant under the Lease and all waivers or indulgences granted by Landlord to Tenant under the Lease, and (iii) diligence, presentment and suit on the part of the Landlord in the enforcement of any of the Obligations.

Notwithstanding anything to the contrary, provided Tenant was not, at any time during the Lease Term, in default of any of the terms, conditions or covenants of the Lease, notwithstanding the fact that any prior default by Tenant may have been subsequently cured, the liability

of the Guarantor arising hereunder shall terminate upon the expiration of the thirty-sixth (36th) full calendar month of the Lease Term.

On April 18, 2017, a "First Amendment to Shopping Center Lease" was executed by landlord, TC Propco, and tenant, Slingshot. The amendment states:

> 2.     Commencement Date. As of the Effective Date, Landlord and Tenant hereby agree that Article VII.A of Exhibit "C" attached to the Lease shall be amended, such that the Commencement Date shall be deemed to be April 15, 2017.
>
> . . . .
>
> 4.     Release. Landlord and Tenant both acknowledge and agree that the effect of amending the Commencement Date to be April 15, 2017, rather than September 16, 2015 (the date that otherwise would have been the Commencement Date, but for this Amendment; herein called the "Original Commencement Date"), is that Tenant will not be obligated to pay rent from the period from the Original Commencement Date through April 14, 2017 (the "Forbearance Period").
>
> . . . .
>
> 5.     Guaranty. Notwithstanding anything to the contrary, Guarantor hereby joins in the execution of this Amendment to confirm that the Guaranty remains in full force and effect and that Guarantor shall remain liable for the payment and performance of all of the covenants, duties and obligations under the Lease to be paid and performed on the part of "Tenant" under the Lease, including, but not limited to, the payment of rent (as amended herein) that becomes due and payable by Tenant under Lease.

A page titled "Joinder" was attached to the amendment and stated

> Guarantor has joined in the execution of this Amendment for the purposes of providing consent to the terms and provisions of this Amendment and acknowledging that the Guaranty remains in full force and effect to secure the payment and performance of all liabilities, obligations and duties of Tenant under the Lease, as amended by this Amendment.

The joinder page was signed by Mark Page, an individual, and Melissa Page, an individual.

On July 21, 2017, pursuant to a purchase and sale agreement, TC Propco's lease with Slingshot was assigned to 3838 Oak Lawn. On March 4, 2019, Slingshot assigned an amended lease transferring its lease to Z-Tribe, LLC.[4] Under a "Consent to Assignment and Amendment to Lease," Slingshot retained its obligation to pay rent, and Z-Tribe assumed the obligation to pay rent under the lease as well.

Z-Tribe failed to pay rent and notices for nonpayment of rent were sent on October 11, 2019 and November 18, 2019. The Pages received copies of these notices via certified mail. On January 29, 2020, the Pages were sent a written notice of default which gave them an opportunity to cure the unpaid rent. Z-Tribe was sent additional written notices of default on February 24, 2020 and April 27, 2020 and given an opportunity to cure the unpaid rent. The owed rent went unpaid by the Pages or Z- Tribe.

In the underlying proceeding, 3838 Oak Lawn asserted claims against the Pages and Slingshot for breach of lease, breach of guaranty, and breach of assignment. It filed a motion for summary judgment and as part of its summary judgment evidence, 3838 Oak Lawn submitted the lease, the amendment to the lease,

---

[4] Z Tribe, LLC was initially a defendant in this case, but executed a settlement agreement with 3838 Oak Lawn. They are not a party to this appeal.

the guaranty, and the lease ledger documenting all payments made and balances owed for the Z-Tribe lease. 3838 Oak Lawn amended the motion twice.

The Pages submitted declarations in response to 3838 Oak Lawn's second amended motion for traditional summary judgment. 3838 Oak Lawn objected and claimed the declarations constituted incompetent summary judgment evidence because they contained statements that were "conclusory and self-serving" with "no factual support" and "contradict[ed] prior deposition testimony." Following a hearing, the trial court granted the motion and awarded 3838 Oak Lawn $1,887,392.21, which included unpaid past due rent, lost future net rentals, and reletting costs after crediting an offset from the Z-Tribe settlement agreement. The trial court also awarded 3838 Oak Lawn attorney's fees in the amount of $159,204.52, plus attorney's fees in the event of an appeal. This appeal followed.

## ANALYSIS

In eight issues, the Pages and Slingshot argue: (1) 3838 Oak Lawn lacks standing; (2) the trial court erred by rejecting their contention the guaranty contained a "drop dead provision"; (3) the summary judgment evidence did not support 3838 Oak Lawn's claim of liability and damages; (4) 3838 Oak Lawn should not be allowed to recover damages after the debt was released and terminated; (5) 3838 Oak Lawn's global release to Z-Tribe (another original defendant) discharged the lease and guaranty; (6) they were denied a trial by jury; (7) the trial court failed to

credit Z-Tribe's settlement money as an offset; and (8) the trial court erred by imposing joint and several liability on them for attorney's fees.

## I.      Standing

The Pages and Slingshot initially challenge 3838 Oak Lawn's standing to bring the underlying lawsuit. First, they argue that 3838 Oak Lawn lost any standing to sue as the property's landlord when "it sold the land and assigned its position to CIM Group Acquisitions, LLC" in April 2017. Second, they contend the "Lease Termination and Settlement Agreement" executed with Z-Tribe shows 3838 Oak Lawn no longer has any standing because the lease was deemed terminated.

3838 Oak Lawn maintains it has standing to sue for breaches of the lease, the assignment, and the guaranty because it has an "enforceable interest in receiving the agreed-upon compensation" for the rent, and it suffered harm when the Pages refused to pay the amounts owed by them as guarantors. It also argues it has capacity to sue under the lease and guaranty. 3838 Oak Lawn further states the settlement agreement with Z-Tribe did not deprive it of standing in this suit because that settlement was for a lesser amount than the damages owed, and 3838 Oak Lawn is entitled to be made whole by "recovery of its damages from all liable parties."

"A party must have both standing to sue and capacity to sue." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome, whereas the issue of capacity 'is conceived of as

a procedural issue dealing with the personal qualifications of a party to litigate.'" *Id*. at 849. "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id*. at 848–49 (quoting *Nootsie Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)). Standing is a component of subject matter jurisdiction and can never be waived. *Id*. at 849; *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 650 (Tex. App.—Dallas 2013, pet. ref'd). Unlike standing, "an argument that an opposing party does not have the capacity to participate in a suit can be waived." *Nootsie*, 925 S.W.2d at 662 (citing TEX. R. CIV. P. 93).

3838 Oak Lawn, via a sales contract, was assigned the lease with Slingshot with the Pages as guarantors. It has standing because it was personally aggrieved when the lease was not fully performed by Z-Tribe and Slingshot. It also has capacity because it still has a legal authority to act for damages under the contract. 3838 Oak Lawn can properly bring this suit. We overrule the Pages' and Slingshot's first issue.

## II.  Summary Judgment

Next, the Pages and Slingshot argue the summary judgment evidence did not support 3838 Oak Lawn's claims of liability and damages. The Pages further contend the guaranty had a 36-month "drop dead clause" under which their obligations should be discharged. 3838 Oak Lawn argues the evidence shows there

was no genuine issue of material fact and the Lease, Guaranty, and Assignment were valid and enforceable contracts.

We review a summary judgment ruling de novo. *Aflalo v. Harris*, 583 S.W.3d 236, 240–41 (Tex. App—Dallas 2018, pet. denied) (en banc) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). The movant must prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166(a); *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017). "We review summary judgment evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *B.C.*, 512 S.W.3d at 279.

### A.    Guaranty Provision

The Pages argue that the following "notwithstanding clause" limits their liability under the guaranty:

> Notwithstanding anything to the contrary, provided Tenant was not, at any time during the Lease Term, in default of any of the terms, conditions or covenants of the Lease, notwithstanding the fact that any prior default by Tenant may have been subsequently cured, the liability of the Guarantor arising hereunder shall terminate upon the expiration of the thirty-sixth (36th) full calendar month of the Lease Term.

They assert that the lease's commencement date was "no earlier than March 31, 2015, and no later than September 30, 2015." Using those dates, the Pages argue

the guaranty expired or "dropped dead" on September 30, 2018. They contend 3838 Oak Lawn's entire theory of liability and damages fails if the notwithstanding clause is applied because it limits the scope of guaranty. They maintain the trial court erred by rejecting this argument and granting summary judgment for 3838 Oak Lawn.

To determine a guarantor's liability, we look to the language of the guaranty agreement. *BBVA USA v. Francis*, 642 S.W.3d 932, 936 (Tex. App.—Houston [14th Dist.] 2022, no pet.). The interpretation of a guaranty agreement, like any contract, is a legal question we review de novo. *Id*. We construe guaranties strictly according to their precise terms and must not extend the guarantor's obligations beyond the language of the agreement. *Id*. We also construe a guaranty as we would any other contract, and our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Id*.; *see Plains Expl. & Prod. Co. v. Torch Energy Advisors, Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).

We afford terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). We consider the entire contract, respecting all provisions so that none are rendered meaningless. *Plains Expl. & Prod.*, 473 S.W.3d at 305. If possible, we avoid a construction that is unreasonable, inequitable, and oppressive. *Francis*, 642 S.W.3d at 936. If the contract is unambiguous, we enforce it as written without considering parol evidence. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam).

Applying these standards, we conclude the Pages' analysis is flawed because it is based on an incorrect commencement date. The first amendment to the lease amended the commencement date to April 15, 2017, and stated the guaranty remained in "full force and effect and that Guarantor shall remain liable for the payment and performance" of all requirements of the tenant under the lease. The Pages signed a joinder stating they provided consent to the "terms and provisions of this Amendment and acknowledging that the Guaranty remains in full force and effect to secure the payment and performance of all liabilities, obligations, and duties of Tenant under the Lease, as amended by this Amendment." Even though the Pages allege they did not agree to the First Amendment, the original guaranty, which they did agree with, also states "For the purposes hereof, the term "Tenant" shall include any assignee of Tenant and the term "Lease" shall include any amendment of the Lease effected by Landlord and Tenant, with or without the consent or knowledge of Guarantor." Under the plain language of the First Amendment, the commencement date of the Lease became April 15, 2017. Thirty-six months from that date was April 15, 2020. If no default occurred before April 15, 2020, then the Guaranty would have expired on that date.

Here, however, Slingshot defaulted on rent in January 2019, and Z-Tribe defaulted in February 2021 and April 2021. The Guaranty, therefore, did not expire at the end of thirty-six months, and the Pages remained liable under the documents they signed and joined. We conclude the notwithstanding provision did not change

–11–

that obligation, and the drop-dead provision cannot be invoked. We overrule appellant's second issue.

## B.    Summary Judgment Evidence

Having determined the Guaranty's 36-month provision was valid and in effect at the time of the rental defaults, we turn next to appellants' contention the evidence presented in support of summary judgment was insufficient to support the trial court's summary judgment ruling. 3838 Oak Lawn submitted the following evidence in support of the motion: the original lease between TC Propco and Slingshot, the guaranty signed by the Pages, the First Amendment to the Shopping Center Lease including the Pages' signatures on the joinder document, the Assignment from Slingshot to Z-Tribe, and the letters sent to Z-Tribe and Slingshot regarding unpaid rent. Although the Pages argue the guaranty did not apply to the commencement date in the First Amendment, they are mistaken. The wording in the documents, plus the wording contained in the joinder they signed, clearly show the First Amendment was an amendment to the original lease, amended the commencement date, and the guaranty applied.

The Pages and Slingshot argue the commencement date begins on March 5, 2015 and ends on March 8, 2018. They state there was no default on rent prior to March 8, 2018, and therefore, the 36-month provision in the guaranty should apply. They later submitted a post-submission brief raising arguments regarding settlement credit, ambiguity of the guaranty provision, and stated the joinder document did not

"create" a new guaranty under which they were still liable. That same day, they also filed a First Trial Amendment where they raised "release" as an affirmative defense. However, the brief and trial amendment were submitted after the trial court issued its order granting 3838 Oak Lawn's summary judgment.

Nothing presented by the Pages and Slingshot showed an ambiguity in the documents or a fact question to be resolved by a jury. Z-Tribe and Slingshot failed to perform under the lease agreement by not paying rent within the first 36 months of the lease. The Pages' guaranty did not expire at the end of the first 36 months due to the unpaid rent. Therefore, the Pages were still liable under the terms of the guaranty. The trial court did not err by granting summary judgment on behalf of 3838 Oak Lawn. Their third and fourth issues are overruled.

## III.    Release and Discharge of Lease with Z-Tribe

In their fifth and sixth issues, the Pages argue the settlement agreement 3838 Oak Lawn executed with Z-Tribe terminated the lease, and therefore, released them from their obligations under the Guaranty. They also argue that the final judgment did not give them credit for Z-Tribe's $60,926.00 settlement with 3838 Oak Lawn. 3838 Oak Lawn argues the Pages and Slingshot waived this issue by not raising the affirmative defense of release prior to the summary judgment hearing or order. 3838 Oak Lawn also states the settlement amount it received from Z-Tribe was deducted from the amount ordered prior to the final judgment.

Release is an affirmative defense. TEX. R. CIV. P. 94. The "defendant bears the burden to plead and prove the existence of an effective and valid release." *Barras v. Barras*, 396 S.W.3d 154, 170 n.5 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990)). In general, a release is a complete bar to any later action based upon matters covered in the release. *Schomburg v. TRW Vehicle Safety Systems, Inc.*, 242 S.W.3d 911, 913 (Tex. App.—Dallas 2008, pet. ref'd). A release applies to a party that is either specifically identified in the release or described with sufficient particularity. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984). When a release refers to a related document, that document should be considered when reviewing a release. *Anheuser-Busch Cos. v. Summit Coffee Co.*, 858 S.W.2d 928, 932–34 (Tex. App.—Dallas 1993, writ denied), *vacated on other grounds*, 514 U.S. 1001, 115 S.Ct. 1309 (1995).

3838 Oak Lawn is correct in its assessment. The Pages and Slingshot did not raise an affirmative defense of release prior to the entry of the order granting summary judgment. But even if they had raised release as an affirmative defense, it would fail. The settlement agreement document was executed between 3838 Oak Lawn and Z-Tribe and identifies the landlord and tenant as the parties to the agreement. Under the section titled "Dismissal of Claims Against Tenant," the settlement agreement states,

for clarity and avoidance of doubt, by this Agreement, Landlord and Tenant agree that Landlord does not intend to and shall not dismiss the Lawsuit nor any claims against any party other than Tenant in the Lawsuit or otherwise waive or release any other claims against any other person or entity arising out of or related to the Lease or the Premises.

At no point in time was the guaranty or the Pages mentioned in the settlement agreement. Therefore, even if the Pages had properly raised release as an affirmative defense, it would fail because there was no indication in the settlement agreement that it was written to release the guaranty obligation.

The Pages also allege the trial court did not give credit to the amount of the settlement agreement in the final judgment. That is incorrect. The trial court awarded 3838 Oak Lawn damages of $1,887,392.21, which were calculated by adding $403,165.97 of unpaid rent, $998,085.99 of liquidated damages, and $486,145.25 of reletting costs after subtracting the $63,541.73 payment from Z-Tribe's settlement agreement. The Pages' fifth and sixth issues are overruled.

## IV. Attorney's Fees

The Pages and Slingshot argue 3838 Oak Lawn did not properly prove up or allocate its attorney's fees. 3838 Oak Lawn states it was entitled to attorney's fees based on the language contained in the lease, guaranty, and assignment. We agree with 3838 Oak Lawn.

To recover attorney's fees, a party must establish that it prevailed on a claim that allows the recovery of fees, as well as the reasonableness and necessity of the

–15–

claimed fees. *Rohrmoos Venture v. UTSW DVA Healthcare*, 578 S.W.3d 469, 484 (Tex. 2019). Additionally, "if a fee opponent seeks a reduction, it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id*. at 501. The lodestar method for determining the reasonableness and necessity of attorney's fees in a fee-shifting situation states:

> the determination of what constitutes a reasonable attorney's fee involves two steps. First, the [fact finder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [fact finder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The [fact finder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*Id*.

At a separate hearing regarding attorney's fees, 3838 Oak Lawn presented evidence in the form of an uncontested testimony of Samuel Hardy, its lead attorney designated as its attorney's fee expert. Hardy stated he worked 48 hours at a rate of $500, his co-counsel worked 288 hours at a rate of $425, another attorney at their firm worked 4 and a half hours at a rate of $425, Hardy's paralegal worked 35 hours at a rate of $240, and another paralegal worked for 1.8 hours at a rate of $235 an hour. He also presented billing records regarding the work performed on the case, the dates worked, time spent, the reasonable hourly rate, and stated he reduced the fees charged for work that duplicated. The Pages objected to the hearing and testimony but provided no specific evidence to overcome the reasonableness of Hardy's testimony and figures. Under this record, we conclude the trial court did not

err by awarding attorney's fees in the amount of $159,204.52 against the Pages and Slingshot.

The Pages also argue the claims are not properly segregated according to each client. We disagree. Segregation is required between claims that are nonrecoverable versus recoverable claims. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). A "recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so intertwined that their 'prosecution or defense entails proof or denial of essentially the same facts." *Id*. Here, the claims against the defendants below were each based on the same documents and the trial court's interpretation of those documents. We conclude 3838 Oak Lawn was not required to segregate its attorney's fees per defendant because the facts were so intertwined that their proof relied on essentially the same facts. The trial court did not err by granting the attorney's fees. We overrule appellants' seventh issue.

## V.    Jury Demand

Next, appellants argue they were denied their right to have a jury to determine damages and attorney's fees. This is incorrect. However, there was no right to a jury trial on damages because there was no issue of material fact for a jury to determine.

Regarding attorney's fees, 3838 Oak Lawn argues the Pages did not request that the issue be tried to a jury. We review the denial of a jury demand for an abuse of discretion. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). Reasonableness is

a fact issue that a jury, upon proper request, may resolve. *Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, 622 S.W.3d 74, 90 (Tex. App.—Corpus Christi-Edinburg 2020, no pet.). However, even though a jury demand was filed in the court's papers by another original defendant, the Pages did not make a request for a jury trial. The Pages were, therefore, not entitled to a jury trial as to fees. We overrule their eighth issue.

## CONCLUSION

3838 Oak Lawn conclusively established it was entitled to the damages the trial court awarded it under the lease, the first amendment to the lease, and the guaranty. Appellants failed to present evidence to raise a genuine issue of material fact concerning the obligations under the guaranty. The trial court, therefore, did not err by granting summary judgment for 3838 Oak Lawn. Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

211150F.P05

–18–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK PAGE, MELISSA PAGE, AND SLINGSHOT VENTURES STORES, LLC, Appellants

No. 05-21-01150-CV     V.

3838 OAK LAWN AVE (TX) OWNER, LLC, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-20-03633. Opinion delivered by Justice Partida-Kipness. Justices Nowell and Rosenberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee 3838 OAK LAWN AVE (TX) OWNER, LLC recover its costs of this appeal from appellants MARK PAGE, MELISSA PAGE, AND SLINGSHOT VENTURES STORES, LLC.

Judgment entered this 9th day of May 2023.